RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0029p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

────────────────

UNITED STATES OF AMERICA,

　　　　　　　　*Plaintiff-Appellee*,

　*v.*

JOSH SMALL (20-5117); JONI AMBER JOHNSON
(20-5120),

　　　　　　　　*Defendants-Appellants*.

Nos. 20-5117/5120

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 3:18-cr-00137—Pamela Lynn Reeves, Chief District Judge.

Argued:  December 4, 2020

Decided and Filed:  February 10, 2021

Before:  SILER, CLAY, and GRIFFIN, Circuit Judges.

────────────────

## COUNSEL

**ARGUED:**  Kevin M. Schad, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cincinnati, Ohio, for Appellant in 20-5117.  Gregory A. Napolitano, LAUFMAN NAPOLITANO, LLC, Cincinnati, Ohio, for Appellant in 20-5120.  Alan S. Kirk, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.  **ON BRIEF:**  Kevin M. Schad, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cincinnati, Ohio, for Appellant in 20-5117.  Gregory A. Napolitano, LAUFMAN NAPOLITANO, LLC, Cincinnati, Ohio, for Appellant in 20-5120. Alan S. Kirk, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

———————————

**OPINION**

———————————

SILER, Circuit Judge.  Defendants Josh Small and Joni Johnson were both convicted and sentenced under the Federal Kidnapping Statute.  In this consolidated appeal, Small and Johnson raise several issues, including insufficiency of the evidence under the Federal Kidnapping Statute, improper advice to the jury, failure to hold an evidentiary hearing on a pro se motion by Small, and unreasonable sentences.

This case presents an atypical application of the Federal Kidnapping Statute.  Thus, the most significant issue is whether the conduct by the defendants violated the kidnapping statute.  Because they did not transport the victim across state lines, the defendants claim that under the statute, there must be more interstate activity other than traveling into another state.  We **AFFIRM**.

I.

In 2018, Small and Johnson were indicted for aiding and abetting a kidnapping and conspiracy to commit kidnapping in violation of 18 U.S.C. §§ 1201(a)(1), (c).  At trial, Linda Spoon, a seventy-three-year-old resident of Tennessee, testified that she was home alone when she noticed a black Chevrolet Malibu pull into her driveway.  Two individuals who Spoon later identified as Small and Johnson ran into her house.  Small pointed a gun at Spoon.  He then gave the gun to Johnson, who continued to hold Spoon at gunpoint while Small ransacked the home.

During the robbery, Small and Johnson bound Spoon's feet and hands together with computer and phone cords.  Small looked down Spoon's shirt in search of a Life Alert necklace. He took valuable items in the residence including Spoon's jewelry, firearms, knives, cellphones, cash, medicine, and other items and placed them into a pillowcase.  Spoon was held captive in her residence by the defendants for about twenty to twenty-five minutes before they drove away in the Chevrolet.  After the defendants left, Spoon freed herself and called the authorities.

Spoon gave the police a description of her assailants and the car they were driving. Logan Addair, a deputy sheriff in Mercer County, West Virginia, testified at trial that he had received several reports from other departments in Tennessee and West Virginia regarding similar home invasions involving the same vehicle and description of a female and male. Thereafter, Mercer County Sheriff's Department received an anonymous tip that the defendants were driving a black sedan with an out-of-state registration. Addair then proceeded to contact pawn shops in Mercer County in regard to the defendants.

Addair was able to obtain surveillance footage of Small entering and exiting one of the pawn shops where he pawned several knives. Later that day, Addair learned that Small had an active warrant for his arrest in Tennessee. Subsequently, police located the black Chevrolet operated by the defendants in West Virginia and arrested Small. During a search of the vehicle, officers located several items including jewelry, women's clothing, and a receipt that included a Knoxville, Tennessee address, date, and Johnson's name. While Small was being arrested, Johnson fled in a white Ford truck. The police later found the truck, which was purchased by Small in Knoxville, Tennessee, but Johnson was not found in the vehicle. Two days later, the police located and arrested Johnson.

At trial, after the government rested its case, both defendants moved for judgment of acquittal under Federal Rule of Criminal Procedure 29. The district court denied the motions.

During jury deliberations, the jury sent a note to the court that asked for the definitions of the terms "confined," "seized," and "abducted." The United States suggested that the court provide the jury with a dictionary definition for each of the words. Johnson's counsel agreed with the government's proposal. Small's counsel first notified the court that he had no objection in providing dictionary definitions to the jury, but later recommended that the court tell the jury to use the ordinary and natural understanding of the terms. After finding that the proposed definitions would not prejudice either party since they were simple and common sense, the court provided the jury with the Merriam-Webster dictionary definitions of the three words. Shortly afterwards, the jury returned a verdict of guilty on both counts for each defendant.

The probation office prepared presentence reports ("PSRs") for both appellants. Small's PSR calculated a base offense level of 32 and added a two-level enhancement for the use of a dangerous weapon and a two-level vulnerable-victim enhancement. Since Small's total offense level was 36 with a criminal history category of IV, the court calculated his recommended guidelines range to be 262 to 327 months' imprisonment. Johnson's PSR assigned the same total offense level of 36. With a criminal history category of III, the court calculated her recommended guidelines range of 235 to 293 months.

Both defendants' PSRs also included six other uncharged crimes that Small and Johnson were suspected of committing. These crimes were similar to the offense in this case, consisting of allegations of kidnappings and home invasion robberies of elderly victims in West Virginia and Tennessee. Prior to sentencing, the government filed a motion for an upward variance as to both defendants. In support of the motion, the government presented testimony at sentencing in regard to four of the uncharged crimes listed in the PSRs.

Despite defendants' objections, the district court found by a preponderance of the evidence that the information regarding the other uncharged crimes was sufficiently reliable, pursuant to *United States v. Silverman*, 889 F.2d 1531 (6th Cir. 1989). It also sustained defendants' objections to the two-level vulnerable victim enhancement. Subsequently, the court recalculated Small's guideline range as 210 to 262 months and Johnson's guideline range as 188 to 235 months. After considering the 18 U.S.C. § 3553(a) factors, the court granted the government's request for an upward variance and sentenced Small to 360 months' imprisonment and Johnson to 300 months' imprisonment.

II.

Defendants raise four issues on appeal. First, they argue that the government failed to prove all of the elements necessary to convict them of federal kidnapping. Second, they argue that the district court erred when it provided the jury dictionary definitions of the words "confined," "seized," and "abducted" in response to a jury question. Third, Small contends that the district court deprived him of an evidentiary hearing for his pro se suppression claims.

Finally, both defendants argue that their sentences are procedurally and substantively unreasonable.

A.

*Sufficient Evidence.*   First, defendants contend that the evidence presented at trial was insufficient to establish that they kidnapped or conspired to kidnap Spoon.  Specifically, they assert that the government failed to prove beyond a reasonable doubt that Spoon was held for "ransom or reward" and that defendants traveled in or used an instrumentality of interstate commerce in committing or in furtherance of the offense.

*Standard of Review*.  This court reviews de novo whether sufficient evidence supported defendants' convictions.  *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011).  We consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

*The Federal Kidnapping Statute.*

(a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when—

(1) the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense[]

commits the crime of kidnapping.  18 U.S.C. § 1201(a).

*Ransom or Reward or Otherwise.*   Small and Johnson first argue that the government failed to establish that the victim was held for "ransom or reward or otherwise," a necessary element of a kidnapping offense.  Defendants maintain that they did not receive a reward during the time Spoon was confined; instead, the only reward they received was cash from the stolen items they pawned eighteen days later.  In opposition, the government correctly indicates that the

defendants seized and confined Spoon "so they could loot Spoon's home, steal her valuables, and evade arrest."

In relevant part, 18 U.S.C. § 1201(a) makes it a crime to unlawfully "confine [] . . . and hold[] for ransom or reward or otherwise" any person. The "otherwise" language in the statute is interpreted broadly. *United States v. Sensmeier*, 2 F. App'x 473, 476 (6th Cir. 2001) (citing *Gooch v. United States*, 297 U.S. 124, 127–28 (1936)). Congress intended the statute to apply to persons who had been held "not only for reward, but for any other reason." *Id.* (citation omitted). "In other words, 'otherwise' includes any objective of a kidnap[p]ing which the defendant may find of sufficient benefit to induce him to commit the kidnap[p]ing. The defendant need only hold the victim for some purpose of his own." *Id.* (internal quotation and citations omitted); *see also United States v. Zuni*, 273 F. App'x 733, 741 (10th Cir. 2008) (18 U.S.C. § 1201 requires "that the victim be (1) held against his or her will (2) for some benefit to the captor" (quoting *United States v. Gabaldon*, 389 F.3d 1090, 1094 (10th Cir. 2004)). Thus, to satisfy the requirement, it is sufficient for the government to show that the defendant acted for *any* reason which would in *any* way be of benefit. *Gooch*, 297 U.S. at 128.

The government proved through testimony that Small and Johnson seized and confined Spoon by holding her at gun point and binding her wrists and ankles together while they stole her personal property. Since she was confined against her will, Spoon could not call the police or resist in any way. In light of courts' broad interpretation of this element, defendants' actions resulted in an immediate benefit that would be included in the term "otherwise." *See, e.g., United States v. Baker*, 419 F.2d 83, 89 (2d Cir. 1969) (holding that the "for ransom or reward or otherwise" element contained in 18 U.S.C. § 1201(a) is satisfied where the defendant's "ultimate purpose sought to be furthered by [the] kidnap[p]ing is theft").

Here, the government presented ample evidence that the victim was seized and confined in order to enable the defendants to steal the victim's possessions and escape without any interference or resistance. Therefore, a reasonable jury could find that Small and Johnson achieved "some purpose of [their] own." *Sensmeier*, 2 F. App'x at 476. That purpose is sufficient to satisfy the requirement of the statute. In addition, the defendants were able to receive material and monetary rewards during the victim's confinement since they took Spoon's

valuable items and cash. The stolen property was a benefit to the defendants at the time of the kidnapping regardless of whether they received monetary gain for such items eighteen days later. Based on this evidence, we conclude that the "ransom or reward or otherwise" element was met.

*Interstate Commerce.* Small and Johnson next argue that the government failed to prove that they traveled in or used an instrumentality or means of interstate commerce in furtherance of the offense. They assert that the government presented evidence to the jury that only proves defendants merely traveled across state lines at some point in time but did not prove that they traveled in interstate commerce in committing or in furtherance of the kidnapping.

In 2006, Congress amended the Federal Kidnapping Act. Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109–248, 120 Stat. 616 (codified at 18 U.S.C. § 1201(a)(1)). Previously, the statute only applied when the kidnapped person was transported in interstate commerce. Now, it applies when "the *offender* travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense." 18 U.S.C. § 1201(a)(1) (emphasis added). Thus, the additional language expanded federal jurisdiction to reach kidnappings in which the defendant crosses state lines or channels or facilities of interstate commerce were used to commit the crime, even when the physical kidnapping occurred within the borders of a single state. *See id*.

Here, the government proved that Small and Johnson traveled from West Virginia to Tennessee no later than June 29, 2018. Spoon testified that on June 30, 2018, the defendants pulled into her driveway at her home in Rocky Top, Tennessee driving a black Chevy. Small and Johnson invaded Spoon's home, held her at gunpoint, bound her ankles and wrists, ransacked her home, and stole various items and cash within her home. When they were finished, they left Spoon tied up and escaped in their car. Thereafter, the defendants traveled back to West Virginia and pawned off Spoon's stolen property.

Since sufficient evidence proves that the defendants used a rental car to cross state lines, travel to Spoon's home, and escape the scene of the crime, a reasonable jury could conclude that the interstate commerce element is met. *See United States v. Ballinger*, 395 F.3d 1218, 1226

(11th Cir. 2005) ("Instrumentalities of interstate commerce . . . are the people and things themselves moving in commerce, including automobiles . . . ."); *United States v. Bishop*, 66 F.3d 569, 588 (3d Cir. 1995) ("[M]otor vehicles are the quintessential instrumentalities of modern interstate commerce" (internal quotation marks omitted)).  Further, a reasonable jury could also conclude that the defendants used the rental car to facilitate and carry out the actions of the kidnapping.  Johnson and Small do not deny that cars and pawn shops qualify as instrumentalities of interstate commerce.  Rather, they suggest that such use or travel was too attenuated from the alleged kidnapping to create a nexus to interstate commerce.

But they frequently used the same rental car throughout the robbery and kidnapping at issue.  They used that car to travel from West Virginia to Tennessee shortly before the crime.  They also used the same car to travel directly to Spoon's residence and park in her driveway.  Even if we were to conclude that at the time defendants used the car, the plan was to commit only robbery, the defendants used the car to escape the scene of the crime while she was confined.  A reasonable jury could conclude that the frequent use of the rental car was not "casual and incidental" to the kidnapping, but an important tool for the conspirators to effectuate their activities in the commission of the crime.  Therefore, the government was able to sufficiently prove that Small and Johnson traveled in interstate commerce and used a means and instrumentality of interstate commerce in furtherance of the crime.

Johnson further argues that defining this type of activity as federal kidnapping "would result in an unconstitutional expansion of federal power under the Commerce Clause."  Contrary to this view, this is the sort of conduct that may be regulated under Congress' well-established power to forbid or punish the use of the channels and instrumentalities of interstate commerce "to promote immorality, dishonesty or the spread of any evil or harm to the people of other states from the state of origin."  *Brooks v. United States*, 267 U.S. 432, 436 (1925).  The Commerce Clause contemplates congressional efforts "to keep the channels of interstate commerce free from immoral and injurious uses."  *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 256 (1964) (quoting *Caminetti v. United States,* 242 U.S. 470, 491 (1917)).  An act that promotes harm, not the harm itself, is all that must occur in commerce to permit congressional regulation. *See Brooks*, 267 U.S. at 436.

*Conspiracy.* Defendants also argue that the government failed to prove that Small and Johnson conspired to violate the kidnapping statute. Johnson indicates that the government did not present any evidence of an agreement between the defendants or any conduct of conspiracy beyond the allegations of the home invasion. Further, defendants incorporate the same arguments as above that their conduct did not constitute a federal crime of kidnapping, and therefore, the conspiracy conviction must be overturned.

To prove a conspiracy to kidnap under § 1201(c), the government must show: "(1) the existence of an agreement to violate the law; (2) knowledge and intent to join the conspiracy; and (3) an overt act constituting actual participation in the conspiracy." *United States v. Blackwell*, 459 F.3d 739, 760 (6th Cir. 2006). Just as the existence of a conspiracy "may be inferred from circumstantial evidence, a defendant's knowledge of and participation in a conspiracy also may be inferred from his conduct and established by circumstantial evidence." *United States v. Conatser*, 514 F.3d 508, 518 (6th Cir. 2008).

An agreement between Small and Johnson can be inferred from their actions. Johnson's argument assumes that proof of communications between defendants were necessary in order to establish an agreement to kidnap the victim when all that is required is evidence of "a tacit or material understanding among the parties." *United States v. Henley*, 360 F.3d 509, 513 (6th Cir. 2004) (quoting *United States v. Pearce*, 912 F.2d 159, 161 (6th Cir. 1990)). Evidence presented at trial shows that Johnson and Small worked in concert to invade Spoon's home, hold her at gunpoint, and tie her up in order to steal her valuables. It can be inferred from defendants' actions that both individuals realized the purpose and result of their actions. Johnson followed Small's instructions in holding Spoon at gunpoint and tying her up, while Small was able to ransack her home and steal her valuables. After they were finished, they did not release Spoon; instead, they escaped in the rental car while she was still confined against her will. These facts together are sufficient to prove that Small and Johnson were in agreement in the commission of the offense. We affirm the district court's kidnapping convictions as to both defendants.

B.

*Response to Jury Question*. During jury deliberations, the jurors sent a note to the court asking for the definitions of the terms "confined," "seized," and "abducted." In response, the government pointed the court to the Sixth Circuit Pattern Jury Instructions, which state that a court should "tak[e] pains to adequately explain the point that obviously is troubling the jury." The United States suggested that the court provide the jury with dictionary definitions of the three terms. After taking the United States' suggestion under advisement, the district court instructed the jury as follows:

> Federal law does not specifically define those words in this context, but the parties have agreed to offer you the following definitions which are essentially from Merriam-Webster dictionary. Those definitions are as follows: The word "confine" means to either hold within a location or to keep within limits. The word "seize" means to take or lay hold suddenly or forcibly. The word "abduct" means to seize and take away a person by force. Now, keep in mind that you should consider what I have just said, together with all the other instructions that I gave you earlier. All of those instructions are important and you should consider them together as a whole.

Defendants argue that the supplemental jury instructions were erroneous or an abuse of discretion because they denied them a fair trial and were substantially prejudicial to them.

*Standard of Review*. Generally, "[t]his court reviews a district court's 'actions in responding to questions from the jury' for abuse of discretion." *United States v. Davis*, 490 F.3d 541, 548 (6th Cir. 2007) (quoting *United States v. August*, 984 F.2d 705, 712 (6th Cir. 1992) (per curiam)). "A jury instruction which states the law with substantial accuracy and fairly submits the issues to the jury will not provide grounds for reversal." *Clarksville-Montgomery Cnty. Sch. Sys. v. U.S. Gypsum Co.*, 925 F.2d 993, 1003 (6th Cir. 1991). Judgment will be reversed "only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Beard v. Norwegian Caribbean Lines*, 900 F.2d 71, 72–73 (6th Cir. 1990).

In this case, however, the defendants failed to make a proper objection at trial to the district court's response to the jury's question about the meaning of the words as used in the jury instructions. *See United States v. Ray*, 803 F.3d 244, 277–78 (6th Cir. 2015). Johnson's counsel clearly stated on the record that he had no objection to the use of the government's proposed

dictionary definitions in response to the jury question. Even though Small's counsel was not as clear, he did not specifically object to the use of such proposed definitions and, therefore, we do not construe his statements as a proper objection.[1] For that reason, we will not reverse the defendants' convictions on this basis unless the instructions amounted to plain error. *See* Fed. R. Crim. P. 30(d) & 52(b). "In the context of challenges to jury instructions, plain error requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice." *United States v. Newsom*, 452 F.3d 593, 605 (6th Cir. 2006) (internal quotation marks, citation, and alteration omitted).

The trial court is entitled to exercise its discretion in deciding how best to respond to inquiries made by the jury during its deliberations. *See United States v. Nunez*, 889 F.2d 1564, 1568 (6th Cir. 1989). "When a jury seeks clarification of particular issues . . . the judge should clear away its difficulties with 'concrete accuracy.'" *Id*. (quoting *Bollenbach v. United States*, 326 U.S. 607, 612–13(1946)). In *United States v. Giacalone*, this court made clear that a supplemental instruction is one that goes beyond reciting what has previously been given; it is not "merely repetitive." 588 F.2d 1158, 1166 (6th Cir. 1978). The propriety of a supplemental instruction must be measured "by whether it fairly responds to the jury's inquiry without creating . . . prejudice." *Id.*

When a statutory term is undefined, such as the questioned terms in the case at hand, courts give it the "ordinary meaning." *United States v. Santos*, 553 U.S. 507, 511 (2008). To ascertain ordinary meaning, courts often turn to dictionary definitions for guidance. *Id.* (noting the term "proceeds" can be defined through dictionary definitions as either "receipts" or "profits"). Several other circuits have taken this same approach in regard to jury instructions and responses to jury questions.[2] Here, Congress did not define "confined," "seized," or "abduct" in

---

[1]First, Small's counsel stated, "I agree with using a dictionary definition for these three words that they have asked the definition for." Later on, he stated, "there [are] a thousand cases out there that say if the word is not defined, we're to use the ordinary and natural meaning. I think that's closer to what . . . this Court is supposed to direct them to do. But other than that, I have no objection."

[2]*See, e.g.*, *United States v. Snyder,* 189 F.3d 640, 646 (7th Cir. 1999) (finding that the court's providing of the dictionary definition of the term "sale" to include the term "trade" was proper after the jury sent the judge a note asking whether trading was considered selling); *United States v. Romero*, 57 F.3d 565, 572–73 (7th Cir. 1995) (supplemental instruction responding to jurors' request for definition of "possess" was proper, where it accurately stated the law and where the district court "took pains to avoid highlighting the instruction by reminding the jury

the Federal Kidnapping Statute so we must give the terms their ordinary meaning, and as the district court determined, a dictionary was the best resource. *See Keeley v. Whitaker*, 910 F.3d 878, 882 (6th Cir. 2018); *United States v. Grant*, 636 F.3d 803, 810 (6th Cir. 2011) (en banc).

Defendants' main argument is that a jury's reliance upon dictionary terms during deliberations is error. They rely upon cases such as *United States v. Gillespie*, 61 F.3d 457 (6th Cir. 1995), and *United States v. Griffith*, 756 F.2d 1244 (6th Cir. 1985). However, as the government correctly points out, those cases are distinguishable from this case because they involve the jury's unauthorized use of a dictionary. Here, the jury requested specific definitions of terms in the statute, and the court answered their question by reading the dictionary definitions of those terms. Hence, the jury's use of a dictionary was authorized, and the court addressed the jury's request with the parties by hearing their preferences before instructing the jury. Thus, the district court did not plainly err in using dictionary definitions of the undefined terms.

Furthermore, the supplemental instruction was a correct statement of the law. As the district court correctly concluded, the Merriam-Webster dictionary definitions of these three terms were simple and common sense. Defendants argue that the jurors should have been free to use their common sense, either suggesting that the instruction was unnecessary or that the definitions were not ordinary and plain meaning. However, they point to no authority suggesting that the definitions provided by the district court are not proper definitions of the terms or that they inappropriately distort their meanings under the statute. Nor do they give any other definitions that the court could have used. In their replies, appellants cite to *United States v. Hill*, 963 F.3d 528, 536 (6th Cir. 2020), wherein this court defined the term "abduct" as moving a victim from the location of the offense. As this is not much different from the dictionary definition given of the term, this slight change was not prejudicial to the defendants. Further, the term "abduct" did not apply to defendants' actions since the government did not argue that they moved the victim. Instead, the government argued that the defendants seized and confined the victim within her home. Because no other courts have defined "seized" or "confined" in the

---

that it 'shouldn't make its determination based on what one instruction says'"); *United States v. Lopez*, 590 F.3d 1238, 1248 (11th Cir. 2009) (concluding that the district court did not err in using dictionary definition to define "encourage" in § 1324(a)(1)(A)(iv) and including "to help" in the definition did not "render . . . superfluous" the other two subsections of § 1324).

context of the statute, and the instruction did not alter an element of the kidnapping offense but merely clarified, at the jury's request, the actions that fall under kidnapping, the instruction correctly stated the law.

Finally, the supplemental instruction was non-prejudicial, much less a grave miscarriage of justice, because the inclusion of the dictionary definitions cleared up the jury's confusion and ensured that the importance of the terms would not be diminished. Johnson contends that she was substantively prejudiced by the supplemental instructions but does not explain any facts that give rise to this conclusion. She suggests that the fact that the jury found defendants guilty shortly after they were given the supplemental instructions proves she was prejudiced. But this is not enough by itself to show that a defendant was prejudiced. Viewed as a whole, the district court's original jury instructions and its supplemental instructions were not confusing, misleading, or prejudicial. *See United States v. Young*, 553 F.3d 1035, 1050 (6th Cir. 2009).

## C.

*Failure to Hold Evidentiary Hearing*. Small raises one individual issue. He argues that the district court erred by not holding an evidentiary hearing regarding his arrest warrant and alleged *Brady* issues. Prior to trial, Small filed a pro se "Motion for Ineffective Assistance of Counsel." The district court held a hearing on this motion. During the hearing, Small claimed that his counsel was ineffective for failing to file a motion to suppress because he was arrested without a valid warrant and he was beaten by the arresting officers. He also stated that *Brady* material was being withheld from him. Since Small and his counsel could not work out their issues, the district court replaced Small's counsel. Even with new counsel, Small himself raised these issues to the court again at the end of the trial and during his sentencing hearing.

However, neither of Small's attorneys filed a motion to suppress or a motion for *Brady* materials. "It is well settled that there is no constitutional right to hybrid representation." *United States v. Cromer*, 389 F.3d 662, 681 n.12 (6th Cir. 2004). Moreover, Eastern District of Tennessee Local Rule 83.4(c) states that a defendant may not represent himself pro se after appearance of counsel unless the court has issued an order of substitution. The court may,

however, in its discretion, "hear a party in open court, notwithstanding the fact that the party is represented by an attorney." *Id.*

In light of the procedural history, it can be concluded that Small waived his right to appeal the absence of an evidentiary hearing regarding his arrest warrant and alleged *Brady* issue. In *New York v. Hill,* the Supreme Court noted that it has, "in the context of a broad array of constitutional and statutory provisions, articulated a general rule that presumes the availability of waiver," even when that waiver involves "the most basic rights of criminal defendants." 528 U.S. 110, 114 (2000) (quotations omitted). The Court has offered extensive overviews of the principles differentiating defense rights that counsel may waive or forfeit for tactical purposes and fundamental rights, which a criminal defendant must personally waive. *Id.* at 114–15; *Gonzalez v. United States*, 553 U.S. 242, 250–51 (2008).

Due to the nature of Small's suppression claims, these decisions constitute the type of trial management decisions that can be determined and thus, waived by the lawyer. Each of Small's attorneys chose not to pursue an evidentiary hearing in regard to the alleged invalid arrest warrant or *Brady* issues. Since "the lawyer has—and must have—full authority to manage the conduct of the trial . . . decisions by counsel are generally given effect as to what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence." *Hill*, 528 U.S. at 115 (citations and quotations omitted). Thus, the district court was not required to have a hearing on such issues. As a result, the district court's response was sufficient, and it did not need to hold another hearing in light of Small's pro se claims without further motions or objections from his counsel.

In the alternative, most claims of ineffective assistance of counsel are not suitable for review on direct appeal. "[F]or a criminal defendant in federal custody a motion under 28 U.S.C. § 2255 is generally the preferred mode for raising a claim of ineffective assistance of counsel." *United States v. Ferguson*, 669 F.3d 756, 762 (6th Cir. 2012). We rarely consider ineffective assistance claims on direct appeal because the record is incomplete or inadequate. *Id.* That is true here as well since Small's challenges all focus on counsels' failure to make certain arguments. *See English v. Romanowski*, 602 F.3d 714, 726–30 (6th Cir. 2010) (evaluating the

reasonableness of counsel's strategic choices to determine whether counsel provided ineffective assistance).

Small's underlying claims of ineffective assistance of counsel rely on facts outside the record and are not ripe for decision on this direct appeal. Because the court cannot tell from the record whether trial counsel was ineffective or following sound strategy, we "leave this issue to be decided in the first instance in post-conviction proceedings." *United States v. Bradley*, 400 F.3d 459, 462 (6th Cir. 2005).

## D.

*Reasonable Sentences*. Defendants challenge their sentences as both procedurally and substantively unreasonable. "[W]e review the reasonableness of a sentence under the deferential abuse-of-discretion standard." *United States v. Zobel*, 696 F.3d 558, 566 (6th Cir. 2012).

*Procedurally Reasonable.* Small and Johnson claim that their sentences, which included an upward variance, are procedurally unreasonable because the district court relied upon unproven and unreliable related crimes. The thrust of defendants' argument is that the district court did not find by a preponderance of the evidence that Small and Johnson had committed the home invasions and kidnappings alleged in the PSR. In support, the defendants argue that the district court improperly shifted the burden to the defendants to disprove the facts set out in their PSRs.

"In reviewing for procedural reasonableness, a district court abuses its discretion if it commits a significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *United States v. Johnso*n, 640 F.3d 195, 201–02 (6th Cir. 2011) (internal quotation marks omitted).

At sentencing, "[t]he government bears the burden to establish enhancement factors, where contested." *Silverman*, 889 F.2d at 1535. "The preponderance of the evidence standard applies to contested facts in sentencing proceedings." *Id*. Rule 32 dictates when a district court

must make such factual findings. For sentencing matters that are undisputed, the court "may accept any undisputed portion of the presentence report as a finding of fact." Fed. R. Crim. P. 32(i)(3)(A). Not so, however, for matters in dispute. "[F]or any disputed portion of the presentence report or other controverted matter," the court "must . . . rule on the dispute or determine that a ruling is unnecessary." Fed. R. Crim. P. 32(i)(3)(B). Therefore, in assessing whether the district court complied with Rule 32 in considering the uncharged crimes of similar home invasions and kidnappings, we ask first whether defendants disputed the use of such relevant conduct. *United States v. Mack*, 817 F. App'x 176, 177 (6th Cir. 2020). "If so, we then ask whether the court ruled on the disputed issue." *Id*.

In assessing whether an issue is in dispute at sentencing, we generally require a defendant to "produce some evidence that calls the reliability or correctness of the alleged facts into question." *United States v. Cover*, 800 F.3d 275, 278 (6th Cir. 2015) (per curiam) (quoting *United States v. Lang*, 333 F.3d 678, 681 (6th Cir. 2003)). That evidence typically must be "more than a [defendant's] bare denial." *Id.* (quoting *Lang*, 333 F.3d at 681). "A defendant cannot show that a PSR is inaccurate by simply denying the PSR's truth . . . he must produce *some evidence* that calls the reliability or correctness of the alleged facts into question." *United States v. Adkins*, 729 F.3d 559, 570 (6th Cir. 2013) (quoting *Lang*, 333 F.3d at 681).

Here, the government presented testimony at sentencing that corroborated the factual allegations in the PSR regarding four of the related home invasions. The district court found that the information contained in the PSRs had sufficient indicia of reliability. The court also found by preponderance of the evidence that Small and Johnson were involved in the home invasions described in the PSRs and at sentencing. As to the crimes against the victims, Hale and Philips, described in the PSR, the government did not present testimony at sentencing. But the court found that since the defendants only denied the facts and allegations as laid out in their respective PSRs regarding these two victims and did not produce any evidence to contradict the allegations, it was entitled to rely on the facts in the PSR when sentencing the defendants.

While denying that they committed any of the other uncharged kidnappings and home invasions, defendants failed to offer any evidence to corroborate their claim. The government, on the other hand, presented testimony at sentencing regarding four of the other uncharged

crimes, including victim impact statements. Faced with nothing but defendants' bare denials, the district court was free to "rely entirely on the PSR" findings at sentencing. *Mack*, 817 F. App'x at 178 (finding that the district court properly relied on the PSR where the defendant made "bald assertions" and "failed to produce any evidence"); *Cover*, 800 F.3d at 278–79 (finding that a bare denial of the "accuracy of [a PSR] statement" did not place the issue in dispute where defendant "produced nothing to contradict any of the evidence in the presentence report" that justified the enhancement).

Even if the defendants introduced evidence supporting their challenges to the PSRs, a review of the record indicates that there is sufficient evidence that they were involved in the uncharged crimes. The six other kidnappings and home invasion robberies were against elderly victims in West Virginia, Virginia, and Tennessee. Spoon, the victim in this case, was attacked on June 30, 2018, and the other alleged crimes occurred between June 14 and July 17, 2018. The other crimes were also very similar to the crime against Spoon—they targeted elderly victims, drove a black Chevrolet, checked for a Life Alert necklace, ransacked the home, held the victim at gunpoint, stole valuables and pawned them in West Virginia. Accordingly, the district court did not err relying on the PSRs' findings regarding the related uncharged crimes.

*Substantively Reasonable.* The border between procedural and substantive reasonableness can be blurry, and the analysis often overlaps. *United States v. Herrera-Zuniga*, 571 F.3d 568, 579 (6th Cir. 2009); *see also United States v. Adams*, 873 F.3d 512, 520 (6th Cir. 2017) (explaining that "[t]he determination of what falls in the procedural versus substantive prong of [the sentencing] analysis, however, 'is not fully settled within our [c]ircuit'" (citation omitted)). Here, the overlap is prevalent. Defendants' substantive arguments mirror their procedural arguments—i.e., the district court relied on allegation not proven by a preponderance of the evidence, in deciding to sentence them to an above the guidelines-range sentence. We have ruled, however, that whether a district court improperly relied on erroneous information or assumptions in fashioning a sentence relates to the procedural reasonableness of the sentence. *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019). Thus, although the defendants package this burden of proof and lack of sufficient evidence argument as a challenge to both the

procedural and substantive reasonableness of their sentence, it only contests the procedural aspect.  And in any event, as discussed above, the record does not substantiate those claims.

The substantive reasonableness inquiry determines if the length of a sentence conforms with the sentencing goals set forth in 18 U.S.C. § 3553(a) and asks whether the district judge "'abused his discretion in determining that the § 3553(a) factors supported' the sentence imposed." *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020) (quoting *Gall v. United States*, 552 U.S. 38, 56 (2007)).  "A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *Conatser*, 514 F.3d at 520.  Furthermore, "[f]or a sentence to be substantively reasonable, 'it must be proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes' of § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008) (quoting *United States v. Ronald Smith*, 505 F.3d 463, 470 (6th Cir. 2007)).  Where, as in this case, the district court imposes a sentence outside the guidelines range, "we 'must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'"  *United States v. Boucher*, 937 F.3d 702, 708 (6th Cir. 2019) (quoting *Gall*, 552 U.S. at 50).

In our substantive-reasonableness review, we must "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51.  "Although a sentence that falls within the Guidelines range warrants a presumption of reasonableness in this circuit, there is no presumption against a sentence that falls outside of this range." *Herrera-Zuniga*, 571 F.3d at 590.  And "[t]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall,* 552 U.S. at 51.

*Small's Sentence*.  The district court sentenced Small to 360 months' imprisonment based upon the factors set forth in 18 U.S.C. § 3553(a).  His sentence is 98 months higher than the top end of the advisory guidelines range.  Small contends that his sentence is substantively unreasonable because the district court failed to consider and properly weigh all relevant factors,

assigning too much significance to the uncharged offenses.  He also argues that the court did not create a record sufficient to warrant the sentence imposed and did not explain why the guidelines were not sufficient.

However, looking at the record, it is clear that the district court created a sufficient record that thoroughly details the reasons for the upward variance and the overall sentence imposed. The court evaluated the § 3553(a) factors and summarized all the information used to formulate the sentence.  It emphasized Small's long history of convictions for violent acts, including murder in the second degree, battery, domestic battery, unlawful wounding, as well as convictions for breaking and entering, destruction of property, burglary, theft, and more.  Small's criminal history showed the court that he disregards legal authority, has not learned respect for the law, and has not learned to refrain from criminal conduct.  The district court specifically stated:

> Due to the gratuitous violence of [Small's] conduct in Ms. Spoon's case and in the related home invasions, as well as [his] violence [his] criminal history at large, a lengthy upward variance is appropriate in this case, in light of the nature and circumstances of the offense, the nature and circumstance surrounding [Small] as an individual, and the particular need to protect the public from further crimes, particularly violent crimes, committed by [Small].

*Johnson's Sentencing.*    The district court imposed a sentence of 300 months' imprisonment as to Johnson.  This included a 65-month upward variance from the top of the advisory guidelines range.  Johnson argues that the guideline departure is not sufficiently supported because "a defendant's silence as well or lack of evidence to counter the government's sentencing allegations are not appropriate factors upon which a sentence can be fashioned, let alone enhanced."

The court once again summarized the § 3553 factors and all of the information that it considered in determining Johnson's sentence.  Johnson's criminal history was not as extensive as her co-defendant's, but she had previous convictions for passing contraband, delivery of a controlled substance, public intoxication, driving under the influence, disorderly conduct, and driving offenses.  The court noted that Johnson struggles with substance abuse but has not been

deterred by prior sentences and not learned respect for the law. The district court specifically stated in support of the sentence imposed:

> Due to your collaboration and your apparent comfort with the gratuitous violence of the related home invasions, a lengthy upward variance is appropriate in this case, in light of all of the circumstances of the offense, the nature and circumstances of you as an individual, and the need to protect the public from future crimes, particularly violent crimes, committed by you.

Upon review, the district court thoroughly detailed and outlined the reasoning for the upward variances and sentences for each defendant. "Our task is to determine whether a district court's sentence is reasonable, not whether we would have imposed the same sentence in the first instance." *United States v. Lopez*, 813 F. App'x 200, 205 (6th Cir. 2020). As to Small and Johnson, "it was reasonable for the court to conclude that a weighing of the § 3553(a) factors warranted an upward variance, regardless of whether we would have weighed the § 3553(a) factors differently." *Id.* We recognize that each defendant's sentence included a significant upward variance from the upper end of the guidelines range. "But an upward variance is permitted when the district court adequately addresses the § 3553(a) sentencing factors, provides a detailed rationale for the variance, and imposes a sentence that is otherwise substantively reasonable," which is what the district court exactly did in this case. *Id.* Accordingly, we affirm the defendants' sentences.

IV.

Small's and Johnson's convictions and sentences are **AFFIRMED**.