NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0357n.06

Case No. 22-5452

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Aug 04, 2023
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

SHAWN CHRISTOPHER WRIGHT,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

O P I N I O N

Before: COLE, READLER, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. In 2019, authorities discovered firearms and drugs in Shawn Wright's truck. Wright was charged in a federal indictment with being a felon in possession of firearms and ammunition and possession with intent to distribute methamphetamine. He pleaded guilty to both charges.

At sentencing, Wright and the government disputed whether he was a "career offender" under the United States Sentencing Guidelines. If deemed a career offender, Wright's Guidelines range would increase by over five years. Wright argued that his earlier conviction for second-degree assault under Kentucky law was not a predicate offense for career-offender status because it was not a "crime of violence" as defined in the Guidelines. More specifically, Wright claimed that because Kentucky's second-degree-assault statute was indivisible and criminalized "wanton[]" conduct, it did not satisfy the "elements" clause of the "crime of violence" definition.

The district court disagreed. It concluded that the assault conviction was a crime of violence, that Wright had the necessary career-offender predicates, and that the Guidelines range would be enhanced accordingly. The district court sentenced Wright to the bottom of that enhanced range, 188 months' imprisonment. In doing so, the court noted that even if Wright did not have the requisite predicates for the career-offender designation, it would impose the same sentence because it deemed him a "de facto" career offender.

Wright appeals. As explained below, regardless of whether his second-degree assault conviction qualifies as a crime of violence under the elements clause, Wright has not shown that the district court's alternate basis for imposing a 188-month sentence was unreasonable. Therefore, we AFFIRM on that basis alone.

I.

In November 2019, a sheriff's deputy was dispatched to a residence in Harrogate, Tennessee to investigate a possible burglary. Upon arrival, the deputy saw a clawfoot bathtub loaded in the bed of Wright's truck. The deputy spoke to the homeowner and learned that neither Wright nor the other suspect, Toni Andrews, had permission to take the tub. So, the deputy arrested both suspects. Authorities then searched the truck and found a loaded revolver, a loaded AR-15 rifle, and loaded magazines. They also found 40 grams of methamphetamine, 3.5 grams of suspected heroin, and 49 suspected clonazepam pills. Andrews denied knowledge of the rifle and drugs, and Wright admitted that he stored the revolver in the truck. Wright also divulged that he was a convicted felon.

A grand jury charged Wright with being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1), and possession with intent to distribute five or more grams

of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). Wright pleaded guilty to both charges.

Ahead of sentencing, a United States probation officer prepared a presentence investigation report ("PSR"). After reviewing Wright's criminal history, the officer concluded that Wright was a "career offender" under the United States Sentencing Guidelines. A defendant is a career offender under the Guidelines if, among other things, he has at least two prior felony convictions of either a "crime of violence" or a "controlled substance offense." U.S.S.G. § 4B1.1(a). As relevant here, one of the two predicate offenses the probation officer identified was a Kentucky second-degree-assault conviction from 2001. If deemed a career offender, Wright's Guidelines range would increase—from 120–150 months' imprisonment to 188–235 months' imprisonment.

Wright objected to the PSR's designation of his Kentucky second-degree-assault conviction as a "crime of violence." The Guidelines define "crime of violence" as any felony that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "elements clause"); or (2) is an enumerated crime, including "aggravated assault" (the "enumerated clause"). *Id.* § 4B1.2(a). Wright pointed out that the Supreme Court had recently concluded that the identically worded elements clause in the Armed Career Criminal Act did not include "reckless" crimes. *See Borden v. United States*, 141 S. Ct. 1817, 1825 (2021). And he argued that under Kentucky law, wanton conduct is the equivalent of reckless conduct and that Kentucky's second-degree-assault statute criminalized wanton conduct. Wright therefore claimed that under *Borden*, his second-degree-assault conviction did not satisfy § 4B1.2(a)'s elements clause. As for the enumerated clause, Wright argued that wanton second-degree assault was broader than the enumerated offense of "aggravated robbery," so his Kentucky conviction was also not a crime of violence under that clause.

The government disagreed.  While the government would ultimately concede that under *Borden*, the elements clause did not include second-degree assault committed wantonly, it maintained that the elements clause nonetheless included Wright's particular conviction.  In its view, Kentucky's second-degree-assault statute is "divisible," meaning that it creates three different offenses, two of which criminalize intentional conduct.  The government further maintained that the indictment and plea agreement for the assault conviction made clear that Wright committed one of the intentional offenses.  Thus, in the government's view, the elements clause included Wright's second-degree-assault conviction.

The district court largely agreed with the government.  It first concluded that Kentucky's second-degree-assault statute is divisible.  The court then noted that Wright's plea agreement for his assault conviction incorporated the facts alleged in the indictment, which provided that Wright had "intentionally shot Savannah Sanders with a deadly weapon thereby causing serious physical injury."  (R. 52, Sentencing Hrg. Tr., PageID 297, 304; R. 35-1, Indictment, PageID 138, 141).  As such, the district court concluded that Wright committed one of the intentional varieties of second-degree assault, and Wright's conviction therefore satisfied the elements clause.  Based on this reasoning, the district court applied the career-offender enhancement and calculated Wright's Guidelines range to be 188 to 235 months' imprisonment.

At sentencing, the court deemed Wright's offense of conviction "serious," explaining that he "possessed multiple guns and ammunition as well as distribution quantities of methamphetamine."  (R. 52, Sentencing Hrg. Tr., PageID 316).  As for Wright's history and characteristics, the court noted that even after serving 12 years in prison for second-degree assault, he continued to commit offenses "in ways that [were] dangerous and violent."  (*Id.* at PageID 315–16).  The district court sentenced Wright to 188 months' imprisonment, which was the bottom of

the career-offender enhanced Guidelines range. The court added that "even if" Wright was not "technically a career offender" under the Guidelines, the nature of his current offense and his criminal history rendered him a "de facto" career offender warranting the same 188-month sentence. (*Id.* at PageID 316, 319).

Wright appeals. He makes three arguments in support of resentencing. First, he argues that Kentucky's second-degree-assault statute is not divisible, and since it criminalizes wanton conduct, it does not satisfy the Guidelines' "crime of violence" definition. Even if the statute is divisible, Wright argues that the indictment, plea agreement, and judgment for his second-degree-assault conviction do not show that he committed one of the intentional varieties of second-degree assault. Finally, Wright argues that if we find the district court erred in applying the career-offender enhancement, the district court's alternate basis for his 188-month sentence was both procedurally and substantively unreasonable.

II.

A.

To be deemed a career offender under the Guidelines, a defendant must (among other criteria) have at least two prior felony convictions that are a crime of violence or a controlled-substance offense. U.S.S.G. § 4B1.1(a). A felony is a crime of violence if it satisfies the "elements clause," meaning it "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 4B1.2(a)(1). And although not at issue on appeal, a felony also qualifies as a crime of violence under the "enumerated clause" if it is one of the listed offenses, which includes "aggravated assault." *Id.* § 4B1.2(a)(2).

In deciding whether a prior conviction satisfies the elements clause, we employ the now-familiar categorical approach. Under that approach, courts focus on the elements of the statute of conviction (as opposed the defendant's conduct leading to the conviction) and decide whether the statute of conviction "necessarily" has "as an element the use, attempted use, or threatened use of physical force against the person of another." *Mass v. United States*, 736 F. App'x 102, 104 (6th Cir. 2018) (quoting § 4B1.2(a)(1)); *United States v. Patterson*, 853 F.3d 298, 305 (6th Cir. 2017). The "necessarily" modifier is important: "[i]f *any*—even the least culpable—of the acts" that the statute criminalizes does not involve the type of force described in the elements clause, the statute does not satisfy the clause. *Borden*, 141 S. Ct. at 1822 (plurality opinion) (emphasis added); *see United States v. Butts*, 40 F.4th 766, 770 (6th Cir. 2022).

Sometimes the statute of conviction is "divisible," which means that it defines multiple offenses. *See Mathis v. United States*, 579 U.S. 500, 505 (2016). In that scenario, courts employ the "modified" categorical approach: they "look[] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* at 505–06 (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005)). If these *Shepard* documents reveal which of the multiple offenses the defendant committed, the court can then employ the categorical approach in the usual way. *See id.* at 506.

In the district court, Wright asserted that his second-degree-assault conviction was not a crime of violence under the Guidelines, so we review that issue de novo. *See United States v. Raymore*, 965 F.3d 475, 487 (6th Cir. 2020).

B.

Under Kentucky law a person is guilty of second-degree assault when:

(a) He intentionally causes serious physical injury to another person; or
(b) He intentionally causes physical injury to another person by means of a deadly weapon or a dangerous instrument; or
(c) He wantonly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument.

Ky. Rev. Stat. Ann. § 508.020 (West 2000).

As noted, the government conceded below that the wanton variety of second-degree assault does not qualify as a crime of violence under the elements clause. So if the second-degree-assault statute is indivisible, as Wright contends, then one of the acts criminalized by the statute—wanton assault—would not involve the type of force described in the elements clause. But if the statute is divisible, as the government argues, and if the *Shepard* documents show that Wright committed either of the two intentional varieties of second-degree assault, then Wright's prior conviction would satisfy the elements clause.

Although for reasons discussed below, we need not definitively resolve the issue, it appears that Wright has the better of the divisibility argument.

Start with Supreme Court precedent. In *Mathis*, the Court addressed whether a state statute prohibiting burglary at alternative locations—a "building, structure, [or] land, water, or air vehicle"—was divisible. 579 U.S. at 507. The answer was "easy" because a state court decision had "definitively" resolved the question. *Id.* at 517. The Iowa Supreme Court had held that the locations were "'alternative method[s]' of committing one offense, so that a jury need not agree whether the burgled location was a building, other structure, or vehicle." *Id.* at 517–18 (quoting *State v. Duncan*, 312 N.W.2d 519, 523 (Iowa 1981)). As such, an Iowa jury could convict if six jurors believed that the burglarized location was a house and the other six believed it was a marina.

*See Duncan*, 312 N.W.2d at 523. Yet a statute's "elements" are "what the jury must find beyond a reasonable doubt to convict the defendant." *Mathis*, 579 U.S. at 504. Because the Iowa statute merely listed alternative "factual means of committing a single element," it was indivisible. *See id.* at 505–06, 517.

Both before and after *Mathis*, our sister circuits have also considered whether jury unanimity is required in deciding whether a state statute is divisible. For instance, the Ninth Circuit has provided, "[w]hile the jury faced with a divisible statute must unanimously agree on the particular offense of which the petitioner has been convicted (and thus, the alternative element), the opposite is true of indivisible statutes; the jury need not so agree." *Rendon v. Holder*, 764 F.3d 1077, 1085 (9th Cir. 2014); *see also United States v. Herrold*, 883 F.3d 517, 522–23 (5th Cir. 2018) (en banc) (similar), *vacated*, 139 S. Ct. 2712, *reinstated in relevant part*, 941 F.3d 173, 177 (5th Cir. 2019) (en banc); *United States v. McArthur*, 850 F.3d 925, 938 (8th Cir. 2017) (similar); *United States v. Fuertes*, 805 F.3d 485, 498 (4th Cir. 2015) (similar).

So what have Kentucky courts said about jury unanimity? The Kentucky Supreme Court has "consistently maintained that the jurors may reach a unanimous verdict even though they may not all agree upon the means or method by which a defendant has committed the criminal act." *King v. Commonwealth*, 554 S.W.3d 343, 352 (Ky. 2018), *abrogated on other grounds by Johnson v. Commonwealth*, --- S.W.3d ---, 2023 WL 4037845, at *8 (Ky. June 15, 2023). This rule originated with *Wells v. Commonwealth*, 561 S.W.2d 85 (Ky. 1978). There, the court found that a jury instruction for first-degree assault did not violate Kentucky's jury-unanimity requirement even though the instruction allowed the defendant to be convicted "if some of the jurors believed . . . that he acted intentionally," while "the remainder of them believed . . . that he acted wantonly." *Id.* at 87–88.

And Kentucky courts have applied the *Wells* rule to the very statute at issue in this case. For instance, in *Moore v. Commonwealth*, the jury instruction presented "alternate methods" of committing second-degree assault. 597 S.W.2d 155, 156 (Ky. Ct. App. 1979). The defendant argued that the resulting conviction "[could not] stand because the jury verdict was not necessarily unanimous" as to the method of assault. *Id.* The Kentucky Court of Appeals disagreed, finding *Wells* "dispositive of this issue." *Id.* And more recently, in *Coffman v. Commonwealth*, the defendant argued that the second-degree-assault jury instruction was erroneous because it permitted some jurors to find that he committed the crime intentionally while allowing other jurors to find that he committed it wantonly based on the same conduct (shooting the victim with a B.B. gun). No. 2004-CA-002140-MR, 2005 WL 3334356, at *3 (Ky. Ct. App. Dec. 9, 2005). The Kentucky Court of Appeals rejected this argument and explained, "[a]lthough a defendant cannot be convicted of a crime without a unanimous verdict, an instruction containing alternate theories of liability does not deprive a defendant of a unanimous verdict if each theory is supported by the evidence." *Id.* (citation omitted).

Kentucky's long-standing rule that a unanimous verdict does not require a jury to agree on the means of committing certain crimes, *Wells*, 561 S.W.2d at 87–88, coupled with Kentucky's application of this rule to its second-degree-assault statute, is strong evidence that the statute is indivisible. It thus appears that the three types of assault set out in the statute are not alternative elements defining multiple crimes but instead alternative means for committing one crime: second-degree assault. *See also Commonwealth v. Hammond*, 633 S.W.2d 73, 74 (Ky. Ct. App. 1982) (providing that the "three elements" of Kentucky's first- and second-degree assault statutes are "the assailant's mental state, the means of attack, and the resultant injury").

Ultimately though, we need not decide the issue because, as we explain below, even if the district court erred in concluding that Wright was a career offender under the Guidelines, the error was harmless.

## III.

Assuming the district court erred in finding that Wright's assault conviction satisfied the elements clause, and thus erred in calculating the Guidelines range, Wright would still not be entitled to a resentencing if this error was harmless.

### A.

The government has the burden of showing that the miscalculated Guidelines range was harmless. *See United States v. Collins*, 800 F. App'x 361, 362 (6th Cir. 2020). "To carry this burden, the government must demonstrate to this Court with certainty that the error at sentencing did not cause the defendant to receive a more severe sentence." *United States v. Lanesky*, 494 F.3d 558, 561 (6th Cir. 2007) (emphasis omitted) (citation and internal quotation marks omitted). "The purpose of our harmless-error analysis is to avoid the efficiency cost of resentencing in cases where we are absolutely certain that the district court would have announced the same sentence had it not erred." *United States v. Montgomery*, 969 F.3d 582, 583 (6th Cir. 2020).

We have found the requisite certainty that a sentencing error was harmless when the district court has explained that even without a Guidelines enhancement, it would have given the same sentence. *See, e.g.*, *United States v. Morrison*, 852 F.3d 488, 491–92 (6th Cir. 2017); *United States v. Butler*, 812 F. App'x 311, 315 (6th Cir. 2020). Here, the district court did just that; it expressly declared that "even if" Wright did not have the necessary predicates for the career-offender designation, it would "still" sentence Wright to 188 months' imprisonment because, in its view, he was a "de facto" career offender. (R. 52, Sentencing Hrg. Tr., PageID 316, 319). And the

district court explained its basis for deeming Wright a "de facto" career offender, referencing his "significant prior criminal history involving violence, drug trafficking and firearms" as well as the need to protect the public from further crimes by Wright.  (*Id*. at PageID 319).  Thus, we are convinced that it would have given the same sentence had it found that Wright was not technically a career offender under the Guidelines.  Wright makes no argument to the contrary.

B.

Instead, Wright argues that the district court's alternative bases for imposing a 188-month sentence—38 months above the top of the non-enhanced Guidelines range—result in a sentence that is both procedurally and substantively unreasonable.

1.

Wright says his sentence is procedurally unreasonable because the district court did not adequately explain its reasons for deeming him a "de facto" career offender.  *See Gall v. United States*, 552 U.S. 38, 51 (2007) (providing that a district court commits procedural error if it "fail[s] to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range").  The district court stated that Wright's criminal history included "violent, dangerous offenses," (R. 52, Sentencing Hrg. Tr., PageID 315), but, according to Wright, the court declined to specify those offenses and failed to recognize that his prior offenses were already factored into the Guidelines range.

Wright did not preserve this procedural challenge below.  And "unpreserved procedural challenges are reviewed for plain error, requiring an obvious error that would result in a miscarriage of justice without reversal."  *United States v. Skouteris*, 51 F.4th 658, 671 (6th Cir. 2022).

- 11 -

We cannot say that the district court committed obvious error. During sentencing, the district court discussed Wright's criminal history in detail and, contrary to Wright's argument, it did specify the dangerous and violent offenses that led it to conclude he was a "de facto" career offender. The court highlighted the fact that Wright's second-degree-assault conviction involved shooting the victim with a gun. It also pointed out that in 2015, Wright was convicted for drug trafficking while in possession of a firearm. Moreover, the court discussed how Wright violated a personal protection order by showing up near his estranged wife's home on multiple occasions, which prompted her to call 911 on one occasion. Thus, contrary to Wright's claim, the district court did specify the offenses that it believed supported a de facto career-offender status.

Resisting this result, Wright says this case is just like *United States v. Martinez*, 821 F.3d 984 (8th Cir. 2016). There, the district court incorrectly concluded that the defendant was a career offender under the Guidelines and, like here, indicated that even if he was not "technically" a career offender, it would still consider him to be one. 821 F.3d at 989. But the sentencing court's assumption that the defendant's prior conviction for escape involved violence was not borne out by the record, and the sentencing court also read too much into his gang ties. *See id.* at 989–90. In contrast, the district court's findings here—that Wright shot someone with a firearm, trafficked drugs while possessing a firearm (as a felon), and violated the terms of a personal protection order—are all supported by the record. Moreover, the sentencing court in *Martinez* varied upward nine years from the correct Guidelines range. *Id.* at 990. To be sure, the roughly three-year upward variance here is consequential. But by comparison, it is relatively modest. *See Gall*, 552 U.S. at 50 ("[A] major departure [from the Guidelines range] should be supported by a more significant justification than a minor one."). Accordingly, *Martinez* is unpersuasive on the facts of this case.

In short, Wright has not demonstrated that his sentence is procedurally unreasonable.

2.

Wright says his sentence is substantively unreasonable for several reasons.

"The substantive reasonableness inquiry determines if the length of a sentence conforms with the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Small*, 988 F.3d 241, 258 (6th Cir. 2021). This inquiry includes whether the district court arbitrarily decided on a sentence, based "the sentence on impermissible factors," failed "to consider relevant sentencing factors," or gave "an unreasonable amount of weight to any pertinent factor." *Id.* at 259 (internal quotation marks omitted). Here, assuming the enhancement was inappropriate, the district court effectively varied upward from the (presumptively) correct Guidelines range of 120 to 150 months, so we must ensure that the district court's "justification is sufficiently compelling to support the degree of the variance." *Id.* (citation and internal quotation marks omitted). Our substantive reasonableness review is for abuse of discretion. *United States v. Wells*, 55 F.4th 1086, 1093 (6th Cir. 2022).

Wright asserts that the district court's sentence was substantively unreasonable because the court mischaracterized his criminal history as "violent" and "dangerous."

We disagree. As discussed, in 2001, Wright was convicted for shooting someone. Then, in 2015, Wright was convicted for drug trafficking while in possession of a firearm and for being a felon in possession of a firearm. These firearm-related offenses in combination with drug trafficking are fairly characterized as "dangerous" or "violent." And, regarding the personal protection order violations, even if Wright did not actually contact his estranged wife, he hid inside or behind a neighbor's residence near her home on more than one occasion. It was not unreasonable for the district court to view Wright's behavior as dangerous—indeed, Wright's wife called 911. As for Wright's assertion that the district court mischaracterized his criminal history

as "escalating over time," the court merely stated, "Wright has a lengthy criminal history that dates back to the age of approximately 21. As he aged, the seriousness of these violations has continued." (R. 52, Sentencing Hrg. Tr., PageID 315). "Continued" is not the same as "escalated." In all, the district court did not abuse its discretion in finding that Wright had "repeatedly violated the laws in ways that are dangerous and violent." (*Id.* at PageID 316).

Wright also complains that the district court placed undue weight on his criminal history. He points out that his criminal history was already factored into the Guidelines range, thus implying that the district court "double counted" his criminal history when sentencing him.

An upward variance based on a defendant's criminal history is not unreasonable "simply because the Guidelines calculation already accounts for criminal history as a factor." *United States v. Dunnican*, 961 F.3d 859, 881 (6th Cir. 2020). But an "extreme" upward variance based on a defendant's criminal history may be unreasonable because it creates sentencing disparities among offenders "with similar records who have been found guilty of similar conduct." *United States v. Johnson*, 26 F.4th 726, 738 (6th Cir. 2022) (emphasis omitted) (citation omitted).

That concern is not present here. First, assuming Wright was not a career offender, his Guidelines range was 120 to 150 months' imprisonment, meaning that the district court varied upward by 38 months. That variance is modest compared to the significant moves in the cases Wright cites. *See id.* (upward variance of 115 months); *United States v. Warren*, 771 F. App'x 637, 639 (6th Cir. 2019) (upward variance that nearly doubled the top of the Guidelines range); *United States v. Bistline*, 665 F.3d 758, 760 (6th Cir. 2012) (downward variance from 63 months to one day in prison). Second, Wright has not shown that he is similarly situated to the typical offender with a Guidelines range of 120 to 150 months' imprisonment such that his 188-month sentence creates an unwarranted sentencing disparity. To the contrary: the district court reasonably

found that Wright's criminal history was significant enough to warrant an upward variance absent the career-offender enhancement.

Finally, Wright claims that the district court erred in finding that a sentence at the bottom of the career-offender Guidelines range avoided an "unwarranted sentencing disparity with others who are classified as career offenders." (R. 52, Sentencing Hrg. Tr., PageID 318–19). In support, Wright points out that in 2016, the Sentencing Commission reported that where the predicates for a defendant's career-offender designation were mixed (e.g., one drug-trafficking predicate and one crime-of-violence predicate), the defendant was sentenced below the career-offender Guidelines range 76% of the time. Wright cites a similar statistic from fiscal year 2019. Given that judges typically sentence actual career offenders below the career-offender Guidelines range, Wright argues that his sentence within that range when he is not actually a career offender creates unwarranted sentencing disparities. Wright also says that the career-offender Guidelines range is so unreliable that the district court's use of that range to evaluate sentencing disparities was arbitrary and deprived him of due process.

Perhaps if nearly all courts sentenced career offenders like Wright to substantially below the career-offender Guidelines, the district court's reliance on those Guidelines to avoid sentencing disparities would be unreasonable. But Wright's data does not show that. While more recent data indicates that about 80 percent of career offenders are sentenced below the Guidelines range, that figure includes individuals who received substantial-assistance departures—which Wright did not—and those with only drug-trafficking predicates. *See* U.S. Sentencing Comm'n, *Quick Facts, Career Offenders* 2 (June 2022).[1] Accordingly, the sentencing data that Wright cites does not

---

[1] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Career_Offenders_FY21.pdf

demonstrate that his sentence creates an unwarranted sentencing disparity with similarly situated offenders.

* * *

For the reasons given, we AFFIRM Wright's sentence.