**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0651n.06

No. 12-6252

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 16, 2013
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

BOBBY WILLIAMSON, aka Danny L. Howell,

     Defendant-Appellant.

                                 /

**ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE**

**BEFORE:**    **KEITH, CLAY, and KETHLEDGE; Circuit Judges.**

**CLAY, Circuit Judge.** Defendant Bobby Williamson appeals his 60-month prison sentence and three-year supervised released term resulting from his guilty plea for conspiring to commit robbery, in violation of 18 U.S.C. § 371. He argues that the district court erred in holding him accountable for his co-conspirator's conduct under U.S.S.G. § 1B1.3(a)(1)(B) by enhancing his total offense level by five points for brandishing a weapon and two points for physically restraining victims during a robbery under § 2B3.1(b); he also challenges the physical restraint enhancement specifically, claiming that ordering victims to the ground at gun point does not fall within the meaning of § 2B3.1(b)(4)(B).[1] For the following reasons, we **AFFIRM** Defendant's sentence.

---

[1]Defendant's counsel expressly waived at oral argument his procedural error argument that the district court failed to adequately explain its reason for rejecting Defendant's argument against accomplice liability under § 1B1.3(a)(1)(B). Thus, we do not reach that claim.

**BACKGROUND**

A.    **Factual Background**

This case arises from an attempted robbery of a Red Roof Inn which occurred on June 3, 2010. According to Defendant's own written statement, he agreed to drive Martavis Kerr and Robert Dedeaux around in his girlfriend's car to look for a place to rob. During the drive, Dedeaux asked Defendant to reserve a room at the Red Roof Inn on his behalf because Defendant was the only one of the three that carried identification. Defendant entered the Red Roof Inn and reserved a room with his proper identification, leaving once to purportedly obtain more money from Dedeaux. However, upon his return, he was followed by Kerr who was wearing a ski mask and brandishing a firearm. Kerr ordered everyone inside to the ground and attempted to rob the hotel.

Although Defendant claimed to be shocked at the time and unaware that Kerr intended to rob that particular establishment, the hotel security guard recognized that the two were together and ordered them both to the ground. Neither complied. Defendant and Kerr instead walked towards the guard; Defendant had his hands raised claiming that he was not involved and Kerr had his weapon drawn on the officer. The guard, apparently feeling threatened, fired his weapon in Kerr's direction several times, hitting him once in the leg. Both individuals fled the scene; Kerr left in the waiting vehicle occupied by Dedeaux, while Defendant fled on foot.

Kerr was quickly located at the nearby hospital where he received medical treatment for injuries. He identified Defendant and Dedeaux as participants in the robbery.

**B.      Procedural History**

In September 2010, Defendant was indicted with Kerr and Dedeaux for attempted robbery, in violation of 18 U.S.C. § 1951, and for use of a firearm during an attempted robbery, in violation of § 924(c).  Kerr's and Dedeaux's federal charges were dropped when they pleaded guilty to state charges.  The original charges were dropped against Defendant when, on June 21, 2012, he pleaded guilty to conspiracy to commit robbery in violation of § 371.

Defendant's Presentence Investigation Report ("PSR") attributed Kerr's conduct to Defendant pursuant to U.S.S.G. § 1B1.3's accomplice liability provision.  The PSR recommended a seven-level enhancement under § 2B3.1(b)(2)(A) for Kerr's brandishing of a firearm and causing the security guard to discharge his weapon; and a two-level enhancement under § 2B3.1(b)(4)(B) for physically restraining victims when Kerr ordered everyone in the Red Roof Inn to the ground at gun point.  Defendant's resulting offense level was 26 and his criminal history category was IV, which resulted in a Guidelines' range of 95 to 115 months.  However, the maximum statutory sentence for Defendant's crime was 60 months, which the government requested.

Defendant made several objections to the PSR.  In relevant part, he objected to being held accountable for Kerr's conduct because, despite agreeing to drive his co-conspirators to rob a yet-to-be determined target location, he had no idea that the Red Roof Inn was the target, as demonstrated by the fact that he used his personal identification to reserve a room.  He therefore claimed that Kerr's conduct was not foreseeable.  Defendant also challenged the physical restraint enhancement, arguing that it did not apply to Kerr's conduct of simply ordering individuals to the ground.

The district court held Defendant accountable for Kerr brandishing a firearm (a five level enhancement) and ordering individuals to the ground, which it found to constitute physical restraint.[2] The court reasoned that because Defendant's agreement was so general in that he agreed to rob some yet-to-be determined business, the robbery of the Red Roof Inn fit within the scope of his agreement and was reasonably foreseeable. The court also found that Kerr's specific conduct of brandishing the firearm and ordering individuals to the ground was reasonably foreseeable in the commission of the agreed-upon robbery.

The district court then held that the physical restraint enhancement under U.S.S.G. § 2B3.1(b)(2)(A) applied when an individual orders victims to the ground at gun point because the individuals were moved in such a way as to give the offender an advantage or a "superior position." (R. 19, PID# 65–66.) The district court lowered Defendant's total offense level to 24, and his criminal history category remained IV, which carried a sentencing range of 77 to 96 months. The government recommended the statutory maximum of 60 months while Defendant urged the court to impose a 48-month sentence. The district court reasoned that Defendant's criminal history, the actual criminal conduct, and the fact that the guidelines range was significantly higher than the statutory maximum, counseled in favor of imposing a 60-month prison sentence, which the court ordered along with three years of supervised release.

---

[2]The district court declined to answer the question whether causing a security guard to discharge his weapon can be attributed to a defendant for a seven-level enhancement under § 2B3.1(b)(2)(A). Because the district court believed a five-level enhancement for Kerr brandishing the weapon was obviously applicable, and because there was a 60-month statutory maximum, it determined that this was not the appropriate case for addressing this issue. That finding is not challenged on appeal.

Defendant timely appealed his sentence to this Court.

## DISCUSSION

I. **Brandishing Firearm Enhancement**

A. **Standard of Review**

We review the sentence imposed by the district court for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). We consider "not only the length of the sentence but also the factors evaluated and the procedures employed by the district court in reaching its sentencing determination." *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). To be considered procedurally reasonable, the district court must "properly calculate the guidelines range, treat the guidelines as advisory, consider the § 3553(a) factors and adequately explain the chosen sentence." *United States v. Presley*, 547 F.3d 625, 629 (6th Cir. 2008) (citation and quotation marks omitted). We review legal conclusions concerning application of the Guidelines *de novo* and factual findings in applying the Guidelines for clear error. *United States v. Coleman,* 664 F.3d 1047, 1048 (6th Cir. 2012). A fact is clearly erroneous only where the record as a whole leaves us with a "definite and firm conviction that a mistake has been committed." *United States v. Moon*, 513 F.3d 527, 540 (6th Cir. 2008) (citation and internal quotation marks omitted).

B. **Responsibility for Co-Conspirator Conduct**

When holding a defendant accountable for the actions of a co-conspirator under U.S.S.G. § 1B1.3(a)(1)(B), the district court must make particularized findings: "(1) that the acts were within the scope of the defendant's agreement; and (2) that they were foreseeable to the defendant." *United States v. Campbell*, 279 F.3d 392, 399–400 (6th Cir. 2002) (citation and internal quotation marks

omitted). "In order to determine the scope of the defendant's agreement, the district court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others." *Id*. at 400 (citation and internal quotation marks omitted); U.S.S.G. § 1B1.3 cmt. n.2. Whether a defendant can be held accountable for a co-conspirator's conduct is a factual determination which is reviewed for clear error. *See id.*; *United States v. Dupree*, 323 F.3d 480, 490 (6th Cir. 2003).

### C.    Analysis

We do not find any error in the district court's conclusion that Defendant should be held accountable for Kerr's conduct in brandishing a firearm during the attempted robbery of the Red Roof Inn. Defendant primarily argues that Kerr and Dedeaux's conduct was not within the scope of his agreement or reasonably foreseeable because they did not include Defendant in the decision to rob the Red Roof Inn, and that had he known, Defendant would not have: (1) used his real name to reserve the room, (2) told the security guard that he was not involved, or (3) fled the scene on foot while his co-conspirators fled in Defendant's girlfriend's car. But, as the district court stated, that is just evidence of a poorly executed robbery and bad friends.

Despite Defendant's contention otherwise, the attempted robbery of the Red Roof Inn was within the scope of his agreement with Kerr and Dedeaux; Defendant admits that he agreed to drive Kerr and Dedeaux to *whatever* business they wanted to rob. His agreement to rob a to-be-determined establishment was broad and without any exclusions. Although Defendant arguably was not aware that the Red Roof Inn was the specific business of choice, Kerr's conduct was nonetheless in furtherance of Defendant's general agreement to rob some establishment.

6

Moreover, Defendant's conduct on the day in question reasonably demonstrated an agreement with this specific robbery, further supporting that it was within the scope of his agreement. *See Campbell*, 279 F.3d at 400. The district court found that Defendant was not only present when Kerr attempted to rob the Red Roof Inn, but that he also participated. Indeed, it was Defendant who drove the threesome to the Red Roof Inn. And although Defendant legitimately reserved a room, once Kerr entered the establishment with a firearm, the Red Roof Inn's security guard recognized that Defendant was involved in the robbery. The guard ordered both Defendant and Kerr to get on the floor, yet Defendant did not comply, indicating that he was with Kerr. Instead, both Defendant and Kerr disobeyed that order and walked towards the guard, forcing the guard to discharge his weapon in defense. It was not clear error for the district court to find that the robbery of the Red Roof Inn was within the scope of Defendant's agreement. *See id.*

And finally, the robbery and Kerr's brandishing of a weapon was reasonably foreseeable. Defendant agreed to drive Kerr and Dedeaux around and help them find a business to rob, and they found one. It is reasonably foreseeable that during the course of the drive, Kerr would find a location and attempt to rob it. It was also foreseeable that in the course of the robbery, Kerr would brandish a weapon.[3] *See United States v. King*, 915 F.2d 269, 273 (6th Cir. 1990) (finding that possession of a weapon by a co-conspirator during a bank robbery was reasonably foreseeable); *see also United States v. Brown*, 55 F. App'x 753, 754 (6th Cir. 2003) (unpublished) (finding enhancements proper

---

[3]We need not reach the question whether ordering robbery victims to the ground at gun point is alone sufficient to impose a physical restraint enhancement under U.S.S.G. § 2B3.1(b)(4). Even assuming, *arguendo*, that the two-level enhancement would not apply, the applicable Guidelines' range would not be affected because the new range of 63 to 78 months is still above the statutory maximum of 60 months. *See United States v. Bacon*, 617 F.3d 452, 457 (6th Cir. 2010).

where the defendant's partner brandished a weapon and shot an off-duty security guard during robberies); U.S.S.G. § 1B1.3, cmt. n.2. (advising that a defendant can be held accountable for a co-conspirator who assaults a robbery victim despite the defendant's forewarning not to hurt anyone).

In sum, it was not clearly erroneous for the district court to find that Defendant was accountable for his co-conspirator's conduct where such conduct was both within the scope of the robbery Defendant agreed to and was reasonably foreseeable. The district court did not abuse its discretion in applying the five-level enhancement for brandishing a firearm under U.S.S.G. § 2B3.1(b)(2) or imposing the 60-month maximum sentence.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** Defendant's sentence.