NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0791n.06

No. 12-3982

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

FILED
Aug 27, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| STEVEN MICHAEL PERALES, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| Defendant-Appellant. | ) | DISTRICT OF OHIO |

**BEFORE: KEITH, WHITE, and STRANCH, Circuit Judges.**

**Helene N. White, Circuit Judge.** Defendant-Appellant Steven Michael Perales (Perales) was charged with aiding and abetting in two bank robberies and one attempted bank robbery. Following a jury trial, he was convicted on all three counts and sentenced to 130 months of imprisonment. On appeal, Perales argues that: (1) the evidence does not support his convictions on two counts and is against the weight of the evidence, entitling him to a new trial; (2) the district court erred in admitting testimony regarding an out-of-court identification; and (3) the district court erred in imposing a sentencing enhancement based on the principal's "threat of death" during one robbery. We AFFIRM.

**I.**

This case arises out of Perales's role in a series of robberies committed by his girlfriend, Heather Beasley (Beasley). On October 3, 2011, Beasley entered Apple Creek Banking Company in Wooster, Ohio and handed the bank teller a note that read "5000 in large bills, no dye packs." The teller gave Beasley $2500. Beasley put the money in her purse and fled the scene.

A week later, at 9:03 a.m. on October 11, 2011, Beasley entered the Charter One Bank in Toledo, Ohio and passed the teller a note stating, "5,000 large bills No Die [sic] Packs!!!!" However, when the assistant manager approached, Beasley fled the bank on foot without any money. Thirty-six minutes later, at 9:39 a.m., Beasley entered the Genoa Bank in Millbury, Ohio, located eight miles from the Charter One Bank. Beasley passed the teller the same hold-up note and told the teller that she had a gun. The teller gave Beasley $3350; Beasley put it in her purse and fled. On the road outside the bank, a vehicle picked Beasley up and sped away. The Genoa Bank tellers who witnessed this testified that the getaway vehicle was a silver or white car.

Based on a radio dispatch describing the getaway car, police stopped Perales, who was driving a silver Dodge Neon, and found Beasley hiding in the back seat. A search of the car yielded the clothes Beasley had worn during the Charter One and Genoa Bank robberies (as shown on the bank videotapes), the money stolen from Genoa Bank, and the hold-up note. In addition, Perales was carrying a key to a motel room at the Crown Inn in Millbury, Ohio.

Beasley pleaded guilty of two bank robberies and one attempted bank robbery. *See United States v. Beasley*, 3:11-cr-564 (N.D. Ohio, April 5, 2012). Perales pleaded not guilty to three counts of aiding and abetting Beasley in the offenses in violation of 18 U.S.C. §§ 2 & 2113(a). Following a two-day jury trial, Perales was convicted on all counts and was sentenced to 130 months of concurrent imprisonment on each count and three years of supervised release. Perales filed a timely notice of appeal.

## II.

### A.  Denial of Relief under Rules 29 and 33

Perales argues that as to count one, the Apple Creek robbery, and count two, the Charter One attempted robbery, the Government failed to introduce any evidence that he actively participated in or engaged in any affirmative act in connection with the crimes, and that he is entitled to a new trial. We review de novo a district court's denial of a Rule 29 motion for judgment of acquittal based on the insufficiency of the evidence, *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002), construing the evidence in the light most favorable to the Government and then determining whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Grubbs*, 506 F.3d 434, 438 (6th Cir. 2007).  We do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury.  *United States v. Amawi*, 695 F.3d 457, 491 (6th Cir. 2012) (internal quotation marks omitted).  "Even circumstantial evidence may sustain a conviction so long as the totality of the evidence" establishes the defendant's guilt beyond a reasonable doubt. *United States v. Walls*, 293 F.3d 959, 967 (6th Cir. 2002).

Rule 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  A motion for a new trial under Rule 33 is premised on the assertion that the jury's verdict was against the manifest weight of the evidence.  *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007).  When considering the weight of the evidence for purposes of adjudicating a motion for a new trial, the district judge may act as a "thirteenth juror," assessing the credibility of witnesses and the weight

of the evidence. *Id.* at 593 (citing *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998)). We review a district court's decision to grant or deny a motion for a new trial for abuse of discretion. *United States v. Munoz*, 605 F.3d 359, 366 (6th Cir. 2010). "Generally, such motions are granted only in the extraordinary circumstance where the evidence preponderates heavily against the verdict." *Hughes*, 505 F.3d at 592 93 (citation and internal quotation marks omitted).

"Aiding and abetting requires that a defendant in some sort associate himself with the venture, that he participate[] in it as something he wishes to bring about, and that he seek by his action to make it succeed." *United States v. Lowery*, 60 F.3d 1199, 1202 (6th Cir. 1995) (citation and internal quotation marks omitted). Perales does not contest that Beasley committed the crimes of bank robbery and attempted bank robbery; he argues only that he was not shown to have aided and abetted her. To prove aiding and abetting, the government had to establish: (1) an act by Perales that contributed to the commission of the crime; and (2) Perales's intent to aid in the commission of the crime. *See United States v. Bronzino*, 598 F.3d 276, 279 (6th Cir. 2010); *United States v. Vasquez*, 560 F.3d 461, 469 (6th Cir. 2009).

The district court properly denied relief under Rules 29 and 33 of the Federal Rules of Criminal Procedure. Perales's conviction for his involvement in the attempted robbery is adequately supported by the evidence. The Charter One attempted robbery and the Genoa Bank robbery occurred within forty minutes of each other at banks located eight miles apart. Thus, it is likely that Beasley traveled between the two sites in a vehicle. It is undisputed that Perales drove the getaway car for the Genoa Bank robbery, transporting Beasley away from the scene of the crime he was stopped ten minutes later with Beasley, the stolen money, and hold-up note in the car. Viewing the

evidence in the light most favorable to the Government, these facts could support the inference that Beasley was transported by Perales from the attempted Charter One Bank robbery to the Genoa Bank robbery eight miles away. Although the evidence in the case is circumstantial and no eyewitness saw Perales pick Beasley up from Charter One Bank, "this [c]ourt has never held that eyewitness evidence is needed to secure a conviction." *United States v. Parks*, 278 F. App'x 527, 536 (6th Cir 2008); *see United States v. Davis*, 306 F.3d 398, 409 (6th Cir. 2002).

Perales's conviction for aiding and abetting the Apple Creek robbery is a closer question; however, we find there is sufficient evidence to uphold Perales's conviction. First, the distance Beasley traveled after the robbery corroborates the Government's claim that she had a driver assisting her either immediately following the robbery or shortly thereafter. Two and a half hours after the robbery, police found the clothes that Beasley wore during the crime on the side of a road approximately six miles from the Apple Creek Bank. In addition, the day after the robbery Beasley checked into the Crown Inn Motel a hundred miles away. More significant, there is circumstantial evidence that Perales was with Beasley before and after the robbery. Before the robbery, Beasley was living with Perales in his car in the driveway of a home shared by Kristi Peyatt, Richard Voiles, and Voiles's family. The evidence indicates that, after the robbery, Perales stayed with Beasley at the Crown Inn Motel: Beasley paid a double-occupancy rate; the motel manager recorded a description of Perales's car and license plate number on the room registration form for the final two nights; and a Crown Inn housekeeping and maintenance employee, Brian Osbourne, remembered that a male, matching Perales's description, and female stayed at the motel during this period.

The fact that Perales served as Beasley's getaway driver in two nearly-identical incidents further supports the conclusion that Perales served the same role during the Apple Creek robbery. The evidence indicates that Perales and Beasley had a pattern whereby Beasley robbed the banks using a note, Perales drove the getaway car, and Beasley changed and discarded her clothes after the crime. A rational trier of fact could logically conclude that this pattern was likewise followed during the Apple Creek robbery and thus that Perales aided and abetted Beasley by driving her either to or from the robbery. *See United States v. Cobb*, 397 F. App'x 128, 135 36 (6th Cir. 2010) (upholding bank robbery conviction where there was strong evidence that defendant had committed another robbery with a similar *modus operandi*).

Finally, there is evidence that Perales not only assisted in the robbery, but also advised Beasley on how to commit the robberies. According to Voiles, the week before the Apple Creek robbery, Perales told a group of persons, including Beasley, that when robbing a bank, "just to pass a note on to the cashier and then he said take   to get the money and put in the bag and stuff. And you won't get much time as long as you don't show no weapons." (R. 65: Transcript, PageID 480.) Perales argues that he was not "scheming or planning," but rather "bragging or boasting" and that this discussion was "general" and "hypothetical." Appellant's Br. at 22 23. However, where Beasley followed Perales's "hypothetical" advice in committing her crimes and Perales was in her company, a reasonable trier of fact could find beyond a reasonable doubt that Perales's comment constituted something more than a generalized discussion. Viewing the evidence in the light most favorable to the Government, it was not unreasonable for the jury to conclude that this statement encouraged Beasley to commit the robbery, and could thus serve as further proof that Perales had

the requisite intent to aid in the commission of the robberies, including the Apple Creek robbery. *See* Sixth Circuit Criminal Pattern Jury Instructions, § 4.01.

Accordingly, Perales has not shown that there was insufficient evidence to support his convictions on counts one and two. Similarly, the direct and circumstantial evidence supported Perales's convictions; consequently, the district court did not abuse its discretion by denying Perales a new trial.

### B. Out-of-Court Identification

Perales next challenges the district court's decision to admit FBI Agent Kocher's testimony regarding Crown Inn Motel employee Brian Osbourne's out-of-court identification of Perales as the person staying at the motel with Beasley between robberies. When shown a photograph of Perales the week before trial, Osbourne identified him as the man staying at the Crown Inn. At trial, Osbourne testified that he saw a male at the Crown Inn matching Perales's description. However, Osbourne also testified that the man he saw at the motel was not in the courtroom. Osbourne confirmed, however, that when he previously was shown a photograph, he had identified that person as the man who had been staying at the motel. Later in the trial, the court permitted Agent Kocher to testify that he had shown Osbourne a photograph of Perales a week prior to trial. This court reviews a trial court's evidentiary rulings for an abuse of discretion. *United States v. White*, 492 F.3d 380, 398 (6th Cir. 2007).

Perales argues that "Agent Kocher provided testimony that Mr. Osbourne previously identified Mr. Perales in a photo array. This is classic hearsay as the government offered the out-of-court statement of Mr. Osbourne for the truth of the matter asserted." Appellant's Br. at 38 (citing

Fed. R. Evid. 801(c)). A statement is not hearsay under Rule 801(d)(1)(C), however, if the declarant

"testifies and is subject to cross-examination about a prior statement, and the statement . . . identifies

a person as someone the declarant perceived earlier." These statements of prior identifications are

permitted as substantive evidence because of "the generally unsatisfactory and inconclusive nature

of courtroom identifications as compared with those made at an earlier time under less suggestive

conditions." Fed. R. Evid. 801(d)(1)(C), advisory committee's note (1972).

Under Rule 801(d)(1)(C), Agent Kocher's testimony regarding Osbourne's out-of-court

identification of Perales was admissible non-hearsay because Osbourne testified at trial and was

subject to cross-examination concerning his prior identification. The Seventh Circuit has explained:

> So long as the requirements of Rule 801(d)(1)(C) are met, government agents may testify about a prior statement of identification made by a witness who identified the defendant in a lineup or photospread, but forgets, or changes, his testimony at trial.
>
> The better course, obviously, is to provide the photo array or other evidence of the prior identification immediately, while the declarant is still on the witness stand. But events at trial sometimes make the better course impractical. In such circumstances, a meaningful opportunity to cross-examine a declarant regarding his prior identification is enough to satisfy the requirements of Rule 801, even if the defendant chooses not to use the opportunity.

*United States v. Foster*, 652 F.3d 776, 788  89 (7th Cir. 2011) (internal citations and quotation marks

omitted); *see United States v. Brink*, 39 F.3d 419, 426 (3d Cir. 1994) (finding congressional debate

over Rule 801 suggests that "Congress was aware that third parties would testify to the witness's

prior statements"). Osbourne testified at Perales's trial and defense counsel had the opportunity to

cross-examine him. There is no indication in the record that he was unavailable for reexamination

after Agent Kocher testified. *See United States v. Elemy*, 656 F.2d 507, 508 (9th Cir. 1981) (holding

that FBI agent's testimony regarding witness's prior identification was admissible where nothing in

the record suggested that the declarant was unavailable for reexamination after the agent's testimony); *Foster*, 652 F.3d at 789. Accordingly, Agent Kocher's testimony regarding Osbourne's identification was not hearsay, and the court did not abuse its discretion in admitting the testimony.

### C. Sentencing Enhancement for Threat of Death

Finally, Perales argues that the district court erred in imposing a two-level sentencing enhancement under U.S.S.G. § 2B3.1(b)(2)(F). This court "reviews de novo the district court's application of the Sentencing Guidelines to a particular set of facts, including whether the facts as found warrant the sentencing enhancement under [] § 2B3.1(b)(2)(F)." *United States v. Wooten*, 689 F.3d 570, 574 (6th Cir. 2012) (citing *United States v. Winbush*, 296 F.3d 442, 443 (6th Cir. 2002)). Section 2B3.1(b)(2)(F) instructs that if a threat of death was made during the course of the crime, the sentencing court must increase the defendant's offense level by two levels. Pursuant to U.S.S.G. § 1B1.3(a)(1), Perales is responsible for all acts that he aided and abetted, as well as all reasonably foreseeable acts taken in furtherance of jointly undertaken criminal activity. Perales does not dispute that Beasley made a threat of death when she told the Genoa Bank teller, "I have a gun," however, he asserts that this statement should not be imputed to him because her threat was not "reasonably foreseeable." To support this contention, Perales points out that Beasley did not make a threat of death during the two prior robberies and that his statements regarding how to rob a bank specifically discouraged Beasley from using a gun.

As the guidelines notes explain, if two defendants jointly agreed to rob a bank, and one defendant assaults a victim during the robbery, the co-defendant is accountable for the assault "even if the second defendant had not agreed to the assault and had cautioned the first defendant to be

careful not to hurt anyone [] because the assaultive conduct was in furtherance of the jointly undertaken criminal activity (the robbery) and was reasonably foreseeable in connection with that criminal activity (given the nature of the offense)." U.S.S.G. § 1B1.3, comment, n.2; *see United States v. Dale*, 187 F.3d 638, 1999 WL 618069, at *3 (6th Cir. Aug. 2, 1999) (table) (use of threatening language in a demand note during a bank robbery foreseeable even where the note was written and presented to the bank teller by the defendant's accomplices while the defendant waited outside the bank in the getaway car); *United States v. Parks*, 149 F.3d 1185, 1998 WL 384562, at *1 (6th Cir. June 18, 1998) (table) ("[Defendant] is responsible for his co-defendant's threatening statement because it was made in furtherance of the jointly undertaken criminal activity and it was reasonably foreseeable.").

Accordingly, the district court did not abuse its discretion by imposing the two-level sentencing enhancement under § 2B3.1(b)(2)(F).

**III.**

Based on the foregoing reasoning, we AFFIRM Perales's convictions and sentence.