RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0295p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

DARESE DEANDRE HAILE,

*Defendant-Appellant*.

No. 25-1039

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:22-cr-20629-1—Sean F. Cox, District Judge.

Decided and Filed:  October 29, 2025

Before:  GIBBONS, McKEAGUE, and RITZ, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ON BRIEF:**  Edward A. Bajoka, BAJOKA LAW GROUP, PLLC, Detroit, Michigan, for Appellant.  Meghan Sweeney Bean, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

─────────────────

## OPINION

─────────────────

McKEAGUE, Circuit Judge.  Over the course of several months, Darese Haile (and an unidentified individual) carjacked four Lyft drivers.  The district court imposed an above-Guidelines sentence of 180 months in prison.  Because that sentence is both procedurally and substantively reasonable, we **AFFIRM**.

**I.**

**A.**

In the early morning hours of May 12, 2022, a Lyft driver was met by two assailants, each brandishing a handgun.  The assailants demanded money, so the driver handed over $900.  Unsatisfied, the assailants ordered the driver to exit his car and take off his pants.  Then they fled in the driver's vehicle.

About a month later, two assailants brandishing handguns approached a second Lyft driver.  Much the same as the first attack, the assailants ordered the driver out of the car at gunpoint.  They directed the driver to hand over his property and take off all his clothing, leaving the victim "completely naked."  Victim Statement, R. 64-2 at PageID 634.  The assailants then fled in the driver's vehicle.

Another attack occurred the next day.  As a Lyft driver approached his assigned pickup location, two men waved a flashlight in the driver's direction.  The driver "asked to see their [Lyft] account[,] which the offenders showed him."  Police Report, R. 64-5 at PageID 659.  The men then entered the backseat of the car, produced handguns, and demanded that the driver "give [them] everything [he] [had]."  *Id.*  The driver "surrendered [his] possessions . . . with trembling hands, praying that they would spare [his] life."  Victim Statement, R. 64-2 at PageID 635.  At that point, one of the assailants exited the car, while the other kept his firearm trained on the driver.  True to form, the assailants ordered the driver to get out of the car and take off his clothes.  The driver begged the assailants not to shoot him.  One of the assailants then hit the driver in face with his gun, which caused the driver to momentarily lose consciousness and left him with a swollen face and eye.  The assailants fled in the driver's vehicle, leaving the driver "naked, shocked, and stranded on the side of [the] dark, desolate road."  *Id.*

Several months later, a fourth carjacking occurred.  Just like the other attacks, a Lyft driver was approached by two men, one of whom "opened the rear passenger door and placed a gun to [the driver's] head and demanded him to exit the vehicle and take his clothes off."  Police Report, R. 64-6 at PageID 669.  The assailants took several of the driver's belongings and fled in

his vehicle.  In a subsequent interview, the fourth driver identified Haile from a photo array as one of his carjackers.

Extensive evidence linked Haile to each of the carjackings.  One of Haile's phone numbers, for example, was associated with the Lyft account that requested the first ride.  Another of his phone numbers placed outgoing calls to Lyft around the times of the second, third, and fourth attacks.  Cell site data also indicated that Haile was in the area of each carjacking when it occurred.  And a search at Haile's residence turned up numerous handguns, two stolen vehicles (although not from the four attacks detailed above), and key fobs from several different types of vehicles.[1]

Haile pled guilty to four counts of carjacking, aiding and abetting—one for each attack. At his change of plea hearing, Haile admitted to participating in all four carjackings and acknowledged that his intent was to cause serious bodily harm.  Nonetheless, he attempted to minimize his role.  For the first and second attacks, he claimed that he was not one of the two carjackers, and instead simply drove the carjackers to the scene.  Plea Hearing Tr., R. 58 at PageID 527, 529.  As for the third attack, Haile asserted that he "was the driver again," but also "the guy who called the Lyft drivers to the location."  *Id.* at PageID 531.  He did acknowledge that during the fourth carjacking he "got more involved" by "going in the [driver's] pockets" and "just robbing the person."  *Id.* at PageID 533.

**B.**

The presentence report recommended various offense level enhancements.  Among other things, because a firearm was brandished during the first, second, and fourth attacks, it endorsed a five-point offense level increase under U.S.S.G. § 2B3.1(b)(2)(C) for each of these counts.  As to count three, the report recommended two enhancements relevant to this appeal: a six-level increase under U.S.S.G. § 2B3.1(b)(2)(B) because a firearm was used to strike the third driver,

---

[1]The government contends that one of the key fobs recovered from Haile's home belonged to the third stolen vehicle.  It also points out that Haile's DNA was recovered from inside the first and second stolen vehicles, and that photos of the second stolen vehicle were recovered from his phone.  Those specific facts were not mentioned in the presentence report, nor were they considered at the sentencing hearing.  Accordingly, we do not consider them here in assessing the sentence.

and a two-level increase under U.S.S.G. § 2B3.1(b)(3)(A) because the driver sustained a bodily injury as a result of the strike.

At sentencing, Haile argued that those enhancements were inappropriate. He pointed out that he only admitted to transporting the carjackers, summoning one Lyft driver, and searching through another's pockets. In fact, he asked for a three-point offense level reduction to reflect his self-described minor role in the offenses.

The district court rejected Haile's version of events. It concluded Haile carjacked each victim and found by a preponderance of the evidence that a handgun was brandished or used during each attack. Sent. Hearing Tr., R. 81 at PageID 877, 880, 882, 885–86, 893. It also found that the victim of the third carjacking had sustained bodily injury. *Id.* at PageID 886. In light of those facts, the district court applied each enhancement and did not "see any basis" for an offense level reduction. *Id.* at PageID 896. All told, Haile's Guidelines sentence range was 121 to 151 months.

The district court varied upward from the advisory Guidelines range and imposed the statutory-maximum 180-month prison term. In doing so, it considered various mitigating factors, including Haile's "dysfunctional" and "very difficult family background," as well as Haile's mental and emotional health. *Id.* at PageID 912. But the district court also weighed the "serious, life-threatening" nature of the crimes. *Id.* at PageID 917. It characterized the carjackings as "particularly vicious," indeed "more so than [it had] seen over the course of . . . almost 30 years" on the bench. *Id.* at PageID 911. Particularly troubling to the district court was the humiliation inflicted on the victims, which took the severity of the offenses "up a degree." *Id.* Beyond that, the district court was concerned that Haile had "disrespected" the "incredible break" he received when he was placed on probation just a few years earlier after being convicted of criminal sexual conduct and carrying a concealed weapon. *Id.* at PageID 912. It believed that Haile was "a real threat to society" and that he lacked respect for the law. *Id.* at PageID 913.

After imposing the sentence, the district court asked whether Haile had any objections. Haile's counsel responded that he had no objection other than what was "placed on the record

with regard to the objections that were previously filed and [an] objection to the upward variance." *Id.* at PageID 918.  Haile timely appealed.

**II.**

Haile challenges both the procedural and substantive reasonableness of his sentence.

**A.**

We start with procedural reasonableness.  A sentence may be deemed procedurally unreasonable if the district court "committed [a] significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007).  Ordinarily, we evaluate potential procedural missteps for abuse of discretion.  *Id.*  Under that rubric, we review the district court's Guidelines interpretations de novo, and any factual findings for clear error.  *United States v. Taylor*, 85 F.4th 386, 388 (6th Cir. 2023).  But when the defendant fails to object to a procedural defect at sentencing, we review for plain error.  *See United States v. Vonner*, 516 F.3d 382, 385-86 (6th Cir. 2008) (en banc).

Haile challenges the procedural reasonableness of his sentence on three fronts.  First, he argues that the district court erred in applying various enhancements when calculating his Guidelines sentencing range.  Second, he claims the district court failed to explain why it did not apply a mitigating role reduction.  Finally, Haile contends the district court failed to consider his age-mitigation argument when fashioning his sentence.

**1.**

*Offense Level Enhancements.*  Haile first argues that the district court improperly applied several firearm-related offense level enhancements.  Under the carjacking sentencing guideline, a defendant's offense level is increased by five points if a firearm is brandished or possessed during an attack, while six points are added if a firearm is used.  U.S.S.G. § 2B3.1(b)(2)(B), (C).  And, if a carjacking victim sustains a bodily injury, a defendant's offense level is increased by

two points.  *Id.* § 2B3.1(b)(3)(A).  The district court applied those various enhancements because it concluded that Haile was one of the carjackers and his conduct fit under each enhancement.

At bottom, Haile takes issue with the district court's conclusion that he was one of the carjackers during each attack.  He does not dispute that firearms were used or brandished during each attack, or that the third driver was pistol whipped.  But, according to Haile, he merely transported the carjackers to the first three attacks and, in one instance, summoned a Lyft driver.  And although he admits to more involvement in the fourth attack, he seems to contend that only his partner brandished a firearm.  As a result, he argues that the enhancements should not apply because he played only a minor role in each attack.  We review the district court's factual conclusion for clear error and "affirm . . . so long as the finding is plausible in light of the record viewed in its entirety." *Taylor*, 85 F.4th at 388 (citation modified).

Ample record evidence supports the conclusion that Haile was one of the carjackers.  Here, the district court relied on police reports and victim statements, which spoke of only two gun-wielding suspects.  Further, Haile was identified by the fourth driver and admitted that he went through the victim's pockets.  Moreover, other uncontested facts in the presentence report and record tie Haile to each carjacking.[2]  One of Haile's phone numbers was associated with the Lyft account that requested the first ride, and he admits that he called the third driver.  A second of Haile's phone numbers contacted Lyft just before the second, third, and fourth attacks, and cell site data indicated that Haile was around the scene of each carjacking.  What's more, numerous weapons and stolen vehicles were found at Haile's residence.  Considering all the

---

[2]The presentence report also pinned Haile as one of the carjackers.  Although a district court may accept uncontested portions of a presentence report, it must resolve disputed factual matters.  Fed. R. Crim. P. 32(i)(3).  That said, "[i]n assessing whether an issue is in dispute at sentencing, we generally require a defendant to produce some evidence that calls the reliability or correctness of the alleged facts into question." *United States v. Small*, 988 F.3d 241, 257 (6th Cir. 2021) (citation modified).  "A defendant cannot show that a [presentence report] is inaccurate by simply denying [its] truth." *Id.* (citation modified).  Instead, "he must produce some evidence that calls the reliability or correctness of the alleged facts into question." *Id.* (citation modified).  Here, the parties disagree as to whether Haile offered up sufficient evidence to call the presentence report's facts into dispute and trigger the district court's fact-finding obligation.  We need not resolve that tension because the sentencing transcript makes clear that the district court determined, by a preponderance of the evidence, that Haile was one of the carjackers and that he and his partner brandished handguns. *Id.* (noting that the preponderance of the evidence standard applies to contested facts at sentencing).

evidence, we see no error—clear or otherwise—in the conclusion that Haile was one of the carjackers and that, as a result, the offense level enhancements were properly applied.

To be sure, during the third attack it is not clear whether Haile or his partner struck the victim with a firearm, and the fourth driver identified Haile only as the unarmed assailant. But whether he used a firearm or not, the district court determined that Haile was one of the carjackers during the third and fourth carjacking. And reasonably foreseeable acts done in furtherance of a joint criminal activity are attributed to a defendant for sentencing purposes. U.S.S.G. § 1B1.3(a)(1)(B); *United States v. Catalan*, 499 F.3d 604, 607 (6th Cir. 2007). Haile admits that he helped facilitate each of the carjackings and acknowledged that his intent was to cause serious bodily harm to the victims. The district court concluded that Haile himself brandished a firearm during some of the attacks. And Haile was certainly no stranger to firearms (even though he was prohibited from possessing them), as several were found in his home.

Putting those admissions and facts together, we conclude that it would be reasonably foreseeable that Haile's partner would brandish a firearm during the fourth attack. *United States v. Williamson*, 530 F. App'x 402, 406 (6th Cir. 2013) (finding it "foreseeable that in the course of the robbery, [another individual] would brandish a weapon") (collecting cases). And as to the third carjacking, it was reasonably foreseeable that an injury to the driver would occur, given the group's practice of brandishing weapons to carry out their attacks. *See United States v. Clay*, 90 F. App'x 931, 934 (6th Cir. 2004) (order) (district court did not clearly err in applying sentencing enhancement for bodily injury sustained by victim of pistol-whipping during a robbery; "it was reasonably foreseeable that in the course of the robbery . . . an injury might occur to a store employee" where robbers acted together, each armed with a handgun); *see also United States v. Perales*, 534 F. App'x 502, 507 (6th Cir. 2013) ("As the guidelines notes explain, if two defendants jointly agreed to rob a bank, and one defendant assaults a victim during the robbery, the co-defendant is accountable for the assault . . . ."). Further, under the facts of this case, in which Haile was extensively involved in the carjackings, the district court did not clearly err in concluding that it was reasonably foreseeable that a firearm would be "otherwise used" in the third carjacking, thus justifying application of the six-level enhancement under U.S.S.G. § 2B3.1(b)(2)(B). *See, e.g.*, *United States v. Carson*, No. 24-1731,

2025 WL 1627384, at *3 (6th Cir. June 9, 2025) (concluding "that a co-conspirator's conduct" in using a firearm was reasonably foreseeable in part because the defendant independently possessed firearms at his home and "was involved throughout the robbery conspiracy, including the planning process").

Haile also seems to argue that the district court should have only considered the facts he admitted at his change of plea hearing. Yet even when a defendant admits only limited facts, that "does not keep the government from supporting a sentence with related conduct." *United States v. Louchart*, 680 F.3d 635, 638 (6th Cir. 2012); *United States v. House*, 872 F.3d 748, 753 (6th Cir. 2017) ("[T]hat [the defendant] limited his plea agreement to [a particular] timespan does not allow him to evade responsibility for any conduct relevant to sentencing . . . ."). Indeed, a "district court may enhance a sentence based on relevant conduct so long as its factual findings are supported by a preponderance of the evidence and the sentence imposed does not exceed the statutory maximum." *Louchart*, 680 F.3d at 637. The district court did not need to accept Haile's version of events at sentencing, and it did not err in refusing to do so.

All that said, Haile's argument would fail even if the district court did credit Haile's version of events. Once again, U.S.S.G. § 1B1.3(a)(1) makes clear that a defendant's offense level should be calculated based on the reasonably foreseeable acts of others taken in furtherance of a jointly undertaken criminal activity. While in some cases a limited role may not be enough to render a co-conspirator's brandishing or use of a firearm foreseeable, even based on Haile's version of events, it was reasonably foreseeable that the carjackers would brandish and use weapons during the carjackings, given Haile's connection to numerous handguns and stolen vehicles, his admitted role in facilitating the offenses by repeatedly transporting the carjackers and summoning a driver, and his acknowledgement that his intent was to cause serious bodily injury. *See id.* § 1B1.3(a)(1)(B); *Carson*, 2025 WL 1627384, at *3; *Williamson*, 530 F. App'x at 406; *Perales*, 534 F. App'x at 507. So, even if Haile did play a lesser role, as he suggests, the district court did not clearly err in considering the conduct of the carjackers in fashioning his sentence.

In sum, the district court did not clearly err in applying the offense level enhancements.

**2.**

*Mitigating Role Reduction.* Haile also argues that the district court erred when it gave "no explanation for denying [his] request for a mitigating role reduction." Appellant Br. at 25. Under U.S.S.G. § 3B1.2, a sentencing court can reduce a defendant's offense level if he played a "minimal" or "minor" role in criminal activity, such that the defendant was "substantially less culpable than the average participant." *See* U.S.S.G. § 3B1.2 cmt. n.3(A). Haile argues that the district court failed to explain why Haile's actions, when compared to the accomplices, did not warrant a mitigating role reduction. That argument, however, is based on a premise the district court rejected: that Haile was not one of the carjackers. In essence, Haile contends the district court's explanation was inadequate because it did not incorporate his version of events. To the extent Haile challenges the district court's factual findings, we review for clear error. *United States v. Randolph*, 794 F.3d 602, 616 (6th Cir. 2015); *see United States v. Simpson*, 138 F.4th 438, 447, 450 (6th Cir. 2025). And, as we explained above, the district court did not clearly err in concluding that Haile was one of the carjackers.

Beyond that, although Haile did take issue with the presentence report's failure to apply a mitigation reduction, he did not contest the adequacy of the district court's explanation at the sentencing hearing. "[T]he law is well-settled that a defendant's failure to object to the adequacy of a district court's explanation for rejecting some of his requests for leniency previously raised . . . triggers plain error review . . . ." *United States v. Taylor*, 800 F.3d 701, 714 (6th Cir. 2015); *United States v. Sarlog*, 504 F. App'x 426, 430, 430 n.1 (6th Cir. 2012); *see United States v. Wagner*, No. 22-1880, 2024 WL 328841, at *3 (6th Cir. Jan. 29, 2024) (recognizing that a "pre-sentencing objection to" a sentence "cannot preserve an inadequate explanation challenge). To clear that hurdle, Haile must point to an "(1) error (2) that was obvious or clear, (3) that affected [his] substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *Vonner*, 516 F.3d at 386 (citation modified). "Only in exceptional circumstances" when an error "is so plain that the trial judge was derelict in countenancing it" will we find plain error. *Id.* (citation modified).

The district court in this case did not plainly err.  To be sure, the district court's explanation as to the mitigation reduction was brief.  But beyond taking issue with the district court's factual conclusions, Haile does not specify how the district court's explanation was inadequate.[3]  Throughout the sentencing hearing, the district court engaged in extensive fact finding and ruled on numerous objections.  So, by the time it reached the parties' mitigation arguments, it necessarily considered and explained Haile's central role in the attacks.  Even if the district court should have said more, any such failure was harmless and did not affect Haile's substantial rights.  The record evidence laid out above implicates Haile as a main participant in the carjackings.  *See United States v. Daneshvar*, 925 F.3d 766, 790–91 (6th Cir. 2019).  Accordingly, Haile cannot carry his burden to show that he is entitled to a reduction, resulting in a lower Guidelines range.  *Id.*  The district court's explanation did not amount to plain error.

### 3.

*Failure to Consider Age Mitigation Argument.*  Haile next contends that the district court failed to consider his argument that his age and potential for rehabilitation warranted a lesser sentence.  Haile categorizes that failure as a substantive error and argues that we should review for abuse of discretion.  The government construes Haile's arguments as procedural and argues plain error review applies because Haile did not object below.  At bottom, Haile contends that "the district court was aware of [his age mitigation] argument and chose not to consider it."  Appellant Reply Br. at 5.  Because Haile argues that the district court wholly ignored his

---

[3]U.S.S.G. § 3B1.2 provides a list of non-exhaustive factors for a sentencing court to consider in determining whether a mitigating role reduction is in order.  *See* U.S.S.G. § 3B1.2 cmt. n.3(C).  Neither Haile nor the district court explicitly referenced those factors during sentencing.  Nonetheless, when the district court reached the mitigation arguments, it had already engaged in extensive fact finding, and its observations and conclusions throughout the sentencing hearing line up with the § 3B1.2 considerations.  For example, in concluding that Haile was one of the carjackers, the district court necessarily considered "the degree to which the defendant understood the scope and structure of the criminal activity," "the degree to which the defendant participated in planning or organizing the criminal activity," and "the nature and extent of the defendant's participation in the commission of the criminal activity."  *Id.*; *see United States v. Matos Estrella*, No. 24-3265, 2025 WL 1145214, at *3 (6th Cir. Apr. 18, 2025) ("[A] district court does not commit reversible error by neglecting to explicitly reference and apply each [§ 3B1.2] factor."); *United States v. Taylor*, 818 F. App'x 495, 502 (6th Cir. 2020) ("The district court did not clearly err because many of its findings correspond with the five factors from U.S.S.G. § 3B1.2 cmt. n.3(C).").  In that sense, this case is different than *United States v. Daneshvar*, where the sentencing court did not make "any factual determinations on the record."  925 F.3d 766, 790 (6th Cir. 2019).  Although the district court might have said more, considering its prior analysis and Haile's failure to object to the adequacy of the district court's explanation, we see no plain error in the district court's failure to repeat its findings.

mitigation argument, his claim appears to sound in procedural reasonableness. *United States v. Hymes*, 19 F.4th 928, 933 (6th Cir. 2021); *United States v. Sweeney*, 891 F.3d 232, 239 (6th Cir. 2018). We ultimately, however, need not resolve the dispute over the appropriate standard of review because Haile's challenge fails whether the plain error or abuse of discretion standard applies.

True, "[i]n passing sentence, district courts must address legitimate mitigating arguments raised by the defendant." *Sweeney*, 891 F.3d at 239. That does not mean, however, that a district court must "engage in a formulaic point-by-point refutation of a defendant's mitigation arguments." *Id.* "Rather, the district court's reasons for rejecting the arguments need only be apparent from the sentencing transcript as a whole." *United States v. Brinda*, 851 F. App'x 565, 568 (6th Cir. 2021). In the end, "what matters is that the district judge listened to each argument, considered the supporting evidence, was fully aware of the defendant's circumstances and took them into account." *United States v. Gardner*, 32 F.4th 504, 529 (6th Cir. 2022) (citation modified).

The record belies Haile's conclusion that the district court "gave no consideration to his youth and potential for rehabilitation." Appellant Br. at 20. Haile and the government presented argument concerning Haile's youth, which no doubt made the district court aware of Haile's age. *See Gardner*, 32 F.4th at 530 ("Along the way, the district court also 'listened to each argument' [the defendant] raised." (quoting *Vonner*, 516 F.3d at 387)). While imposing sentence, the district court noted that it "considered [Haile's] history and . . . characteristics." Sent. Hearing Tr., R. 81 at PageID 911. *See Brinda*, 851 F. App'x at 569. As Haile acknowledges, that consideration naturally includes age. Appellant Reply Br. at 4. And, even if not explicit, the district court implicitly took Haile's age into account when it considered his "dysfunctional" upbringing and the "incredible break" he received after a recent conviction—a break only available because of Haile's age. Sent. Hearing Tr., R. 81 at PageID 912. In the end, after the district court considered Haile's personal characteristics, those considerations were outweighed, in part because the district court had seen "many people with [a similar] background . . . that don't engage in this type of criminal activity, this type of humiliation of their victims." *Id.* at PageID 912.

Haile's reliance on *United States v. Flores-Nater*, 144 F.4th 56 (1st Cir. 2025), is unpersuasive.  For one, *Flores-Nater* is an out-of-circuit decision.  For another, unlike the defendant in *Flores-Nater*, who offered one "dominant" mitigation argument concerning his age, *id.* at 64, Haile raised several "mitigation arguments all falling under the general rubric of history and characteristics."  *United States v. Johns*, 65 F.4th 891, 894 (6th Cir. 2023) (citation modified).  Here, to be sure, the district court called out some of Haile's arguments and not others.  Yet the district court's failure to mention Haile's youth does not mean that his age was not considered.  *United States v. Lapsins*, 570 F.3d 758, 774 (6th Cir. 2009) (finding no error despite district court's failure to "specifically respond to [the defendant's] arguments about his remorse, family support, substance abuse problems, and willingness to undergo counseling" because "[t]he district court stated that it had accounted for the nature and circumstances of the offense and the history and the characteristics of [the defendant]" (internal quotation marks omitted)); *United States v. Jeter*, 721 F.3d 746, 756 (6th Cir. 2013) (similar); *United States v. Chiolo*, 643 F.3d 177, 183-84 (6th Cir. 2011) (similar); *Brinda*, 851 F. App'x at 568-69 (similar).  Because the record makes clear that the district court considered Haile's personal history and characteristics—which encompassed his age-mitigation argument—it did not err.

**B.**

Haile also challenges the substantive reasonableness of his sentence.  Namely, he takes issue with the district court's decision to vary upward from the Guidelines range.  "A claim that a sentence is substantively unreasonable is a claim that a sentence is too long . . . ."  *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018).  It asks whether "the [district] court placed too much weight on some of the [18 U.S.C.] § 3553(a) factors and too little on others in sentencing the individual."  *Id.*  But the weighing of the sentencing factors—and the resulting sentence—is "a matter of reasoned discretion, not math, and our highly deferential review of a district court's sentencing decisions reflects as much."  *Id.*  While an above-Guidelines sentence is not afforded a presumption of reasonableness, neither does it "trigger a presumption of *un*reasonableness."  *United States v. Thomas*, 933 F.3d 605, 613 (6th Cir. 2019); *Gall*, 552 U.S. at 51.  So even if the district court imposes an above-Guidelines sentence, the defendant still must show that "the length of the sentence is unreasonable in light of the § 3553(a) factors."  *Gardner*, 32 F.4th at

531 (citation modified). We will affirm an above-Guidelines sentence unless we find that the district court "abused its significant discretion." *Thomas*, 933 F.3d at 613.

Gauged by those deferential standards, Haile has not shown his sentence was unreasonable. The district court acknowledged the applicable Guidelines sentencing range. Sent. Hearing Tr., R. 81 at PageID 913. It then thoroughly explained why an above-Guidelines sentence of 180 months was sufficient but not greater than necessary to achieve the goals of sentencing. It focused on the "vicious," "serious," and "life-threatening" nature of the attacks, and the fact that each involved a firearm. *Id.* at PageID 916-17. It also focused on the fact "the victims were humiliated, forced to take off all their clothes and left . . . naked in the street." *Id.* at PageID 917. To the district court's mind, that feature of the carjackings took the severity of the offenses "up a degree." *Id.* at PageID 911. Indeed, it characterized Haile's attacks as "particularly vicious, more so than [it had] seen over the course of . . . almost 30 years." *Id.* It also explained that Haile had been given "an incredible break" when he received a lenient sentence just a few years earlier and that he "disrespected that break." *Id.* at PageID 912. With those facts in mind, it concluded that Haile was a "threat to society" and that he lacked respect for the law. *Id.* at PageID 913. All in all, the district court did not abuse its discretion because it supported its above-Guidelines sentence with rational reasons rooted in the § 3553(a) factors. *Gardner*, 32 F.4th at 531. And its explanation makes clear why this case fell "outside the heartland to which the Commission intends individual Guidelines to apply." *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (citation modified).

Haile offers two unconvincing counterarguments. First, he claims that the district court gave too much weight to conduct that was already accounted for by the applicable sentencing guidelines. Yet, we have "consistently rejected" the argument "that a sentence is substantively unreasonable whenever a district court considers conduct in imposing a variance that was already used to calculate the Guidelines range." *United States v. Heard*, 749 F. App'x 367, 372 (6th Cir. 2018) (collecting cases). In any event, non-Guidelines considerations supported an upward variance. The district court, for example, placed great weight on the humiliation endured by the victims and the trauma they endured—factors not accounted for by the Guidelines. To the district court's mind, Haile's penchant for humiliating victims was not that of the mine-run

offender.  Quite the opposite, it characterized these attacks as the worst it had seen in several decades on the bench.

Second, Haile argues that district court gave too little weight to potential sentencing disparities because it did not weigh national sentencing statistics.[4]  But the presentence report did present the district court with sentencing statistics.  More to the point, when a district court properly calculates a defendant's sentencing guideline, "it has necessarily taken into account the need to avoid unwarranted sentence disparities, viewed nationally."  *Hymes*, 19 F.4th at 935 (citation modified).  Here, Haile's Guidelines calculation was correct, and the district court was not required "to consult the Sentencing Commission's collected data before issuing a sentence." *Id.*; *United States v. Axline*, 93 F.4th 1002, 1013 (6th Cir. 2024) (affirming substantive reasonableness of sentence when defendant pointed to sentencing data because a district court is not required to consider national sentencing statistics); *United States v. Vance*, No. 23-5766, 2024 WL 4867049, at *14 (6th Cir. Nov. 22, 2024) (similar).  Far from it, we have "expressly reject[ed] imposing such a requirement on district courts."  *Hymes*, 19 F.4th at 936.

Haile's sentence was substantively reasonable.

## III.

Because Haile's sentence was both procedurally and substantively reasonable, we **AFFIRM**.

---

[4]In his reply, Haile clarifies his argument that the district court gave too little weight to sentencing disparities, a substantive argument.  Appellant Reply Br. at 10.  To the extent he argues that the district court did not consider the statistics at all, however, his argument can be construed as procedural.  *See Hymes*, 19 F.4th at 935.  In any event, that argument would fail for the same reasons.